DEERFIELD ESTATES, INC., PLAINTIFF-APPELLANT, v. TOWNSHIP OF EAST BRUNSWICK, DEFENDANT-RE-SPONDENT.

Argued October 12, 1971—Decided January 24, 1972.

---

*Of course, our determination does not in anyway preclude an action for negligence by complainant against respondent.

118

*Mr. Seymour Gelzer* argued the cause for appellant (*Messrs. Iaria and Gelzer,* attorneys).

*Mr. Martin E. Kravarik* argued the cause for respondent (*Messrs. Selesky, Kolsky and Kravarik,* attorneys).

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff is the owner and developer of a substantial tract of land located in the defendant Township. On November 18, 1969, the municipal Planning Board granted final approval of the proposed subdivision of the tract. East Brunswick owns and operates a municipal water system which will be more fully described below. A condition of subdivision approval imposed by the Planning Board, to which plaintiff apparently acceded, was that water mains be installed, or their installation be effectively guaranteed.

On March 30, 1970, plaintiff wrote a letter to defendant demanding that the Township itself undertake the required installation. Upon defendant's refusal to do so, this suit in lieu of prerogative writ was instituted. Cross motions for summary judgment were brought, and after argument the trial court ruled in favor of defendant. The Appellate Division affirmed in a *per curiam* opinion, for the reasons given by the trial judge. Plaintiff appealed directly to this court, without filing a petition for certification, basing its right to do so upon the unsupported allegation that the case involves a substantial question arising under the Constitutions of the United States and of this State, *R.* 2:2–1(a).

We pause to consider the procedural question as to whether plaintiff may reach this court — as has been attempted — by the route of a direct appeal. We conclude that it may not. Our Constitution enumerates the various ways in which an appeal may be taken to the Supreme Court. In pertinent part it reads,

1. Appeals may be taken to the Supreme Court:
(a) In causes determined by the Appellate Division of the Superior Court involving a question arising under the Constitution of the United States or this State; [*N. J. Const.* (1947), Art. VI, § 5, par. 1]

In implementation of this provision our rule of court directs that

Appeals may be taken to the Supreme Court from final judgments as of right: (1) in cases determined by the Appellate Division involving a substantial question arising under the Constitution of the United States or this State; [*R.* 2:2–1(a)]

It will be seen that the rule, in two important respects, appears to be narrower than the constitutional provision. In the first place, it applies only to final, and not to interlocutory determinations. The scope of appeal of interlocutory orders is set forth in *R.* 2:2–2. In the second place, it requires that the constitutional question be *substantial*. The source rule, *R. R.* 1:2–1(a), did not contain the word, "substantial," which was first introduced in the comprehensive revision of the rules which became effective September 8, 1969. But this change in the rules did no more than make explicit a requirement which had always theretofore been found to be implicit. For instance in *Starego v. Soboliski.* 11 *N. J.* 29, 32 (1952), *cert.* den. 345 *U. S.* 925, 97 *L. Ed.* 1356, 73 *S. Ct.* 784 (1953) this court said,

The mere allegation that a cause involves a constitutional question gives no right to an appeal under the rule. There must be a showing that a *substantial* constitutional question is involved and this must be set out with particularity. If it were to be held to be adequate that a mere allegation as to deprivation of property rights in a trespass case is sufficient to satisfy the requirements of *Rule* 1:2–1(a), then every case involving real property can be appealed to this court by the inclusion in appellant's brief of the open *sesame*-due process.

Furthermore the question must be more than merely colorable. *State v. Pometti,* 12 *N. J.* 446, 450 (1953); *State v. DeMeo,* 20 *N. J.* 1, 5 (1955); *In re East Windsor Mun.*

*Util. Auth. v. Shapiro,* 57 *N. J.* 168, 170 (1970), *cert.* den. 401 *U. S.* 1010, 28 *L. Ed.* 2d 546, 91 *S. Ct.* 1256 (1971). And not only must the alleged constitutional issue be substantial and set forth with particularity, but it must also appear that it has not already been the subject of a conclusive judicial determination. *Tidewater Oil Co. v. Mayor and Council of Carteret,* 44 *N. J.* 338, 342 (1965). Finally, the general rule of appellate practice, that ordinarily no issue will be considered by the reviewing court unless raised and argued below, is true of a constitutional issue, unless it goes to the question of jurisdiction or presents a matter of real public importance. Where both these characteristics are lacking, review will normally be denied. *Lettieri v. State Board of Medical Examiners,* 24 *N. J.* 199, 206 (1957); *536 Broad St. Corp. v. Valco Mortgage Co., Inc.,* 5 *N. J.* 393, 395 (1950); *Roberts Elec., Inc. v. Foundations & Excavations, Inc.,* 5 *N. J.* 462, 429 (1950); *State ex rel. Wm. Eckelmann, Inc. v. Jones,* 4 *N. J.* 207, 214 (1950), reh. den. 4 *N. J.* 374, 379 (1950).

■ Whenever the right to appeal is not clear, the proposed appellant should petition for certification, setting forth fully the basis of his claim to appeal as of right, together with such other reasons, if any, as he may feel entitle him to a further review. He thus avoids the risk that his appeal may be dismissed for lack of a substantial constitutional question, *In re East Windsor Mun. Util. Auth. v. Shapiro, supra,* and also presents to this court his most complete, and presumably most compelling statement of reasons to induce the court to act. *Tidewater Oil Co. v. Mayor and Council of Carteret, supra,* at 344.

■ In the light of these well settled principles, appellant obviously lacks standing to pursue a direct appeal as of right. No mention of any alleged constitutional issue was made before the trial judge or in the Appellate Division. In its brief before this court, appellant points out that East Brunswick operates its own water utility, that it requires developers to introduce water mains at their own expense and that

these thereafter become the property of the municipality. The brief then continues:

Plaintiff contends that such action by the municipality contravenes the provisions of Article I of the New Jersey Constitution and the Fifth Amendment of the United States Constitution and constitutes the taking of private property without due process and just compensation.

There is no other mention of any constitutional issue nor are we cited to any authority — save the very general references in the excerpt quoted immediately above — to sustain appellant's position. No substantial constitutional issue emerges. Also the lack of particularity is obvious. For instance, Article I of the New Jersey Constitution, to which we are cited, is a bill of rights and contains 21 separate paragraphs. We have no way of knowing upon which of these sections appellant places reliance. The reference to the Fifth Amendment to the Federal Constitution is equally vague. This amendment contains 5 distinct parts. Presumably appellant has in mind the clause stating that no person shall "be deprived of life, liberty, or property, without due process of law," or the clause forbidding that "private property be taken for public use, without just compensation." But nothing is specified and we are left to mere conjecture. ■ The appeal is, therefore, subject to dismissal. Had this case, however, come before us on petition for certification, the application would in all probability have been granted as posing a question — not of constitutional dimension — but of general public importance, not yet clearly settled by the Supreme Court, *R.* 2:12–4. We will accordingly treat it as if certification had been granted on our own motion. *R.* 2:12–1. *Cole v. I. Lewis Cigar Mfg. Co.,* 3 *N. J.* 9, 13 (1949).

As we have indicated, this matter came before the trial court on cross motions for summary judgment. The record is sparse. The complaint alleges that plaintiff owns certain specified tracts of land in the Township of East Brunswick

and that on November 18, 1969, final approval of a proposed subdivision of the property was granted by the municipal Planning Board. The resolution of the Planning Board granting approval and presumably specifying the conditions upon which it was granted is not part of the record. The complaint goes on to say, however, that under the terms and conditions of the subdivision approval and in accordance with ordinances of the Township of East Brunswick, "water lines and water services must be installed prior to the erection and construction of any dwellings on said subdivision," that the defendant municipality operates a water utility, that on March 30, 1970, plaintiff called upon defendant to install such water mains as might be necessary to serve plaintiff's property and that this the defendant refused to do. Further, it is alleged that defendant also refused to enter into an agreement with plaintiff whereby the latter would install the mains and would be reimbursed according to some agreed upon formula after dwellings had been erected and the Township was receiving water rents. Each side filed a single, rather perfunctory affidavit in support of their respective motions for summary judgment. The affidavits are largely argumentative and add little by way of factual allegations.

■■ The initial question to be considered is whether or not a municipality which has created a planning board and adopted an adequate subdivision ordinance may impose, as a condition of subdivision approval, a requirement that necessary water mains be installed. We have no doubt that it may. The authority is found in *N. J. S. A.* 40 :55–1.21, a section of the Municipal Planning Act (1953), (*N. J. S. A.* 40 :55–1.1, *et seq.*), which reads as follows:

Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate : street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, *water mains*, culverts, storm sewers, sanitary sewers or other means of sewage dis-

posal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest.

The municipality may also require a maintenance guarantee for a period not to exceed 2 years after final acceptance of the improvement, in an amount not to exceed 15 per cent of the cost of the improvement or of the original installation. [Emphasis added]

The Planning Act is an enabling statute. Implementing legislation at the local level, customarily taking the form of a subdivision ordinance and an ordinance creating a planning board, is necessary before the benefits of the statute may become available to any particular municipality. *Kligman v. Lautman,* 53 *N. J.* 517, 536–537 (1969); *Magnolia Development Co., Inc. v. Coles,* 10 *N. J.* 223, 227 (1952). It is further important to note, as set forth in the statute quoted above, and as discussed below, that the local ordinance must set forth "standards." A mere enumeration in the ordinance of required improvements will not suffice. Standards governing the construction and installation of the improvements must be set forth in reasonable detail either in the subdivision ordinance itself, or in other municipal legislation.

The second question to be considered — distinct from but closely akin to the first — is whether a municipality may not only condition subdivision approval upon the installation of water mains, but whether it may also require that the expense of such installation be borne by the developer. It is important, we think, that these two questions be considered separately. There is no doubt at all as to the first. The Legislature has spoken in clear and unambiguous terms. But as to the second our answer must be qualified. A municipality, acting through its planning board, *may,* in an appropriate case, impose the cost of installation of water mains upon the developer. But it may not do so in every instance. There may be many occasions, for instance, when the planning board, while requiring the installation of mains, may leave it to the developer to work out the question of cost allocation with the public or private utility supplying water.

It is now settled as a general proposition that the expense of installing most required improvements may be imposed upon the developer. *Levin v. Livingston Tp.,* 35 *N. J.* 500, 514–15 (1961); *Hilton Acres v. Klein,* 35 *N. J.* 570, 580 (1961); *Cunningham, Control of Land Use in New Jersey Under the 1953 Planning Statutes,* 15 *Rutgers L. Rev.* 1, 42 (1960). But in *Levin* this court was careful to note, by way of a probable exception to the rule, (p. 515), that "[d]eveloper installation of water mains and assessment of the cost thereof may well have special ramifications in certain situations . . ." Before dealing more directly with this point a brief review of our recent decisional law, as it may be relevant to this issue, will be helpful.

In *Reid Development Corp. v. Parsippany-Troy Hills Tp.,* 10 *N. J.* 229 (1952), this court required the municipality, at its expense, to extend its water mains for a distance of 600 feet along a public road on either side of which plaintiff had built homes. Appellant cites this case for the broad proposition that a municipality owning and operating a water system is required to extend the facility to any landowner in the municipality who requests service and to do so at public expense. We cannot give the decision such broad import. In that case the township offered to supply all labor needed to construct the installation and to allow the developer to recoup the cost of materials from future water rentals, provided the developer would agree to increase the size of his proposed lots so that each would have a frontage of 100 feet. This court pointed out that lot size restriction is a function of planning and zoning, that it may not be attained by indirection and that hence the municipal action in this respect was arbitrary and unreasonable, citing *Magnolia Development Co., Inc. v. Coles, supra.* It further held that a municipal ordinance purporting to vest in the governing body an uncontrolled discretion either to extend water mains at municipal expense or to require that the cost be borne by the developer was invalid as being completely arbitrary and without support in any statute. Parenthetically,

with respect to the lack of statutory authority, it must be remembered that this case was decided before the passage of the Municipal Planning Act (1953) which, in *N. J. S. A.* 40:55–1.21 quoted above, specifically permits a municipality, acting pursuant to the statute, to compel the installation of water mains as a condition of subdivision approval. Hence the absence of statutory authority found in *Reid* to have been fatal to the Township's position, can no longer be successfully urged where, by appropriate local legislation, a municipality has chosen to avail itself of this means of land use control. Before leaving *Reid,* we take occasion to quote a passage from Justice Heher's opinion which we believe in broad terms sets forth the true principle to be applied in cases of this sort.

The provision of water for the public and private uses of the municipality and its inhabitants is the exclusive province of the local agency; and it is elementary that the exercise of the power must be in all respects fair and reasonable and free from oppression. There can be no invidious discrimination in the extension of the service thus undertaken by the municipality as a public responsibility. Equal justice is of the very essence of the power. Impartial administration is the controlling principle. The rule of action must apply equally to all persons similarly circumstanced. There is a denial of the equal protection of the laws unless the water service be available to all in like circumstances upon the same terms and conditions, although the rule of equality may have a pragmatic application. Persons situated alike shall be treated alike. [10 *N. J.* at 233]

In an immediately ensuing case between the same parties, *Reid Development Corp. v. Parsippany-Troy Hills Tp.,* 31 *N. J. Super.* 459 (App. Div. 1954), specific limitations upon the first *Reid* decision emerged. Here the plaintiff sought to compel defendant to extend water mains 3,060 feet to certain designated areas which it planned to develop. The defendant refused. Development had not commenced nor was there any assurance that it would. Not a single customer had as yet tied into the 600 foot extension that the defendant had installed in compliance with the judgment in the earlier case. The municipal water utility was apparently

operating at a deficit and had little money for further investment; a number of other developments in the general area were not as yet enjoying the municipal water facility although apparently with as good a claim as plaintiff to demand service. Noting these facts the court distinguished the earlier *Reid* case and decided in favor of the defendant. In doing so it struck down, upon the ground that statutory authority was lacking, an ordinance which defendant had adopted immediately after the first decision, purporting to require developers in all cases to pay for water main extensions. The ordinance was passed in August, 1952, and the Municipal Planning Act (1953) did not take effect until January 1, 1954. *N. J. S. A.* 40:55-1.42.

*Haven Homes v. Raritan Tp.,* 19 *N. J.* 239 (1955) presented the question as to whether the plaintiff developer, having constructed water mains beneath the streets throughout its development, and having dedicated the streets, could thereafter require the defendant municipality to condemn, and hence pay for, the water mains themselves. It was held that the dedication of the highways was intended to carry with it a dedication of the mains embedded in the streets.

*Lake Intervale Homes v. Parsippany-Troy Hills Tp.,* 43 *N. J. Super.* 220 (Law Div. 1956), was the first litigation to come before the courts where a municipality had, pursuant to the Municipal Planning Act, adopted a subdivision ordinance which imposed upon a developer the obligation to install water mains, among other improvements, as a condition of subdivision approval.[1] Plaintiff initially attacked the ordinance on the ground that the statutory authority upon which it was based was intended to apply only to cases where a private water company, as opposed to one owned by

---

[1] The suit was essentially an action at law by the developer to recover from the township the expense to which it had been put in constructing water main extensions which the municipality had refused to install. The end result of the case was a recovery by the plaintiff, but limited to the sum of $6,000 in accordance with a non-waiver agreement entered into by the parties.

a municipality, was involved. Judge (now Justice) Hall refused to accept this argument, referring to the broad language and purpose of the enabling legislation and concluded that ". . . the provisions of the Planning Act control and are an adequate expression of municipal power, whether the supplier of the water be governmental or private." 43 *N. J. Super.* at 225. In the next reported chapter of this litigation, *Lake Intervale Homes v. Parsippany-Troy Tills Twp.*, 47 *N. J. Super.* 334 (Law Div. 1957), the same judge held that the Municipal Planning Act was not retroactive and—absent an attempt to resubdivide — did not permit the imposition of improvement costs on the owners of tracts with respect to which maps had been approved and filed under the so-called "Old Map Act." *R. S.* 46:23–1, *et seq.*, (since repealed *L.* 1953, *c.* 358, *p.* 1941, § 7). Upon review by this court the judgments below were affirmed, *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills,* 28 *N. J.* 423 (1958), the opinion expressing reservations as to the scope of immunity from subdivision control that should result from earlier compliance with the Old Map Act, a point with which we are not here concerned. Significant to the present case, however, is the court's holding that a lack of standards in the ordinance, whereby the entire cost of the improvement would fall upon the developer, while benefits would accrue to other owners abutting the extension, rendered the enactment arbitrary and discriminatory. The standards that the court had in mind, but which were found to be lacking, would ideally have been such as to insure, to the greatest extent practicable, that the cost of extending a municipal water facility would fall equitably upon those who are similarly situated and in a just proportion to benefits conferred. They should be sufficiently flexible to permit consideration to be given to the facts and circumstances of each particular case. Such standards are of course unnecessary where the entire cost of the extension is to be borne by the municipality.

Although in *Ecloss Co., Inc. v. Parsippany-Troy Hills Tp.,* 55 *N. J. Super.* 552 (App. Div. 1959), certif. den. 30

*N. J.* 561 (1959), the court was unable to enforce a water extension agreement because of uncertainty as to its terms, it nevertheless granted quasi-contractual relief to the developer and molded the form of its judgment to reflect, as nearly as possible, the intent of the parties, which had clearly contemplated that the developer would recover an equitable share of installation costs from later collected water revenues.

*Rutan Estates, Inc. v. Belleville,* 56 *N. J. Super.* 330 (App. Div. 1959), certif. den. 30 *N. J.* 601 (1959), presented a somewhat different factual context but again emphasized the recurring guideline of our cases that a municipality must treat persons who are similarly circumstanced within the community served or to be served by the utility, equally and without discrimination. Here the plaintiff had acquired the last remaining undeveloped tract of land in the Town of Belleville, upon which it proposed to build approximately 200 homes. Belleville owned and operated a water supply system which had always returned a profit. All then existing mains had been installed at the expense of the town. The municipality adopted an ordinance providing for the construction of the mains necessary to serve plaintiff's development but at the same time directed that the expense of the installation be assessed against the properties to be benefited pursuant to N. J. S. A. 40:56–1(j) and (k). The court affirmed the action of the trial judge in setting aside so much of the ordinance as imposed the assessment, saying that ". . . when water mains have been built throughout a municipality without assessment and the water utility is in the position here stipulated [financially sound] it is arbitrary and discriminatory, and therefore unlawful, to demand that the last remaining unserved parcel, representing a small fraction of the municipality's total area, pay for the extension of mains to serve it." 56 *N. J. Super.* at 336. Equality of treatment is obviously the pole-star of the court's decision.

*Drake v. Town of Boonton,* 106 *N. J. Super.* 79 (Law Div. 1969) presented the following facts: A property owner, wishing to have a water main extended to his premises, en-

tered into a contract with the municipality in accordance with the terms of which the owner installed the main at his own expense. The contract further provided that if any property owner along the line of the newly constructed main should thereafter desire to tie in to it, he would first be required to pay "a proportionate share of the cost of the installation of the water main" to the party who had undertaken the original installation. The court decided, correctly, that the contract could not be enforced. In addition to the reasons for this result upon which the court relied, we add another. Here the municipality, by way of contract with the actual installer, was really seeking to impose upon all who might benefit from the installation a proportionate share of the expense. This is an entirely proper goal but it may not be pursued indirectly. Municipalities have the means to achieve this result by resort to the statutory scheme for the construction of local improvements to be paid for by assessments levied against those property owners who are benefited, to the extent of such benefits. *N. J. S. A.* 40:56–1, *et seq.* This legislation affords many protections to the individual property owners which might be lost were a contractual arrangement such as the one here presented to be enforced. A similar misuse of municipal authority was discussed and condemned in *Magnolia Development Co., Inc. v. Coles, supra,* Chief Justice Vanderbilt observing that "[t]he defendant municipality has sought to exercise powers accorded to it under [certain] statutes without resorting to them and without giving taxpayers the protection they are afforded thereby. This it cannot do." 10 *N. J.* at 228. While refusing to enforce the contract, the court, in *Drake,* reached an eminently fair result, obviously in harmony with the intent of the parties, by directing that the land owner who had installed the main be reimbursed from future water rentals attributable thereto.

Cases involving the extension of water mains in or into areas outside municipal limits commonly present issues different than those encountered with respect to extensions wholly within the municipality operating the utility. See,

for example, *Woodside Homes, Inc. v. Morristown,* 26 *N. J.* 529 (1958); *Mongiello v. Borough of Hightstown,* 17 *N. J.* 611 (1955); *Yardville Estates, Inc. v. Trenton,* 66 *N. J. Super.* 51 (App. Div. 1961). As the facts of the case before us pose issues only as to extensions within the defendant Township, we limit our discussion accordingly.

It appears to be the generally accepted rule that a municipality, engaged in furnishing water to its inhabitants, has a large measure of discretion as to the limits to which it should extend its mains. At the same time there is an obligation to supply impartially all applicants in substantially like position. Annotations: "Right to Compel Municipality to Extend its Water System," 45 *A. L. R.* 829 (1926), 48 *A. L. R.* 2d 1222 (1956); 56 *Am. Jur., Waterworks,* § 61, p. 966.

All relevant factors may be considered in deciding whether such discretion is to be exercised in favor of or against any proposed extension. These factors may properly include, but need not be limited to, a consideration of all phases of the financial condition of the utility, including its borrowing capacity if that will be called into play, whether there is or is not a reasonable prospect of reaping a profit from the undertaking, whether other sources of water are available to the applicant, whether other applicants are entitled to priority of service and whether the quantity of water estimated to be available is sufficient to meet the proposed new demands as well as existing commitments.[2] Obviously directly related

---

[2] Compare the criteria to be considered by the Board of Public Utility Commissioners in acting upon a proposed extension of facilities with respect to any utility coming within the Board's jurisdiction.

The board may, after hearing, upon notice, by order in writing, require any public utility to establish, construct, maintain and operate any reasonable extension of its existing facilities where, in the judgment of the board, the extension is reasonable and practicable and will furnish sufficient business to justify the construction and maintenance of the same and when the financial condition of the public utility reasonably warrants the original ex-

to this determination is the immediate issue before us here. Who is to bear the expense?

There are three principal ways that a water main extension project may be financed. First, it may be undertaken entirely at municipal cost and expense. It was in this way, for instance, that water mains were constructed throughout the Town of Belleville. *Rutan Estates, Inc. v. Belleville, supra.* In the second place the municipality may undertake the project as a local improvement and assess the cost against the owners of the properties benefited pursuant to the procedure outlined in *N. J. S. A.* 40:56–1, *et seq.*

The third course is to require that the work be done at the expense of the developer either with or without a formula providing for partial or total reimbursement. Recourse to this third alternative, as to which there has hitherto existed some question,[3] may be had only where appropriate local legislation permits the imposition and when it is fair and equitable that this be done. Realistically both the second and third methods will result in placing the ultimate cost upon the

penditure required in making and operating the extension. [*N. J. S. A.* 48:2–27]

In New Jersey a municipally owned water utility, to the extent that it operates solely within municipal limits, is not subject to regulation by the Board of Public Utility Commissioners. While we recognize significant differences between a municipally owned and an investor owned utility, nevertheless the approach taken to the matter of cost allocation where water services are to be extended by the latter may be usefully considered with respect to extensions by a utility that is municipally owned. In this connection see *In re Tp. of Lakewood*, 29 *N. J. Super.* 422 (App. Div. 1954), rearg. den. 30 *N. J. Super.* 79, (App. Div. 1954) ; *In re Bd. of Fire Commrs., Fire Dist. No. 3, Piscataway Tp.*, 27 *N. J.* 192 (1958) ; *Langan v. West Keansburg Water Co.*, 51 *N. J. Super.* 41 (App. Div. 1958) ; *Petition of Highpoint Development Corp.*, 65 *N. J. Super.* 530 (App. Div. 1961) ; *Thomas, Public Utilities: Extension of Service*, 16 *Rutgers L. Rev.* 318 (1962).

[3] While the ability of a municipality under appropriate circumstances to impose extension costs upon a developer has been encouraged for some time, *Cunningham, supra* (15 *Rutgers L. Rev.*, at 42–45) to date this court has not been required to so hold. See *Levin v. Livingston Tp., supra*, at 515; *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, supra* (28 *N. J.* at 423).

owner or purchaser of each tract that has benefited. The second alternative does this directly; the third will normally have the same result since the developer will include the expense as an item in fixing his selling price.

The municipality may employ any of these alternatives as long as the result, as among its consumers, is equitable. It may, for instance, pay for all installations from general municipal funds. On the other hand it may undertake installations as local improvements and assess the cost to the property owners benefited. It may compel each developer to pay all construction costs incident to his development or it may adopt a program whereby developers will be allowed to recoup a part or all of the expense in accordance with the terms of a generally applied formula. What it may not do is to extend mains throughout one development at general municipal expense and then turn about and impose upon another developer the full cost.

The demands of equality do not, however, preclude reasonable differentiation. For instance, individuals and developers need not be treated alike. *Woodside Homes, Inc. v. Morristown, supra,* at 544. Such differentiation in the field of investor owned utilities has received abundant sanction. *In re Bd. of Fire Commrs., Fire Dist. No. 3, Piscataway Tp.,* 27 *N. J.* 192, 206 (1958). We note also the different arrangements set forth for treating the cost allocation of utility extensions by the Board of Public Utility Commissioners in their *Regulations,* 14:408–1 being applicable to developers and 14:408–2 to individuals. "Reasonable differentiation of treatment among users in different situations is not discrimination." *Yardville Estates, Inc. v. Trenton, supra,* at 61. See also *Oradell Village, et al. v. Tp. of Wayne,* 98 *N. J. Super.* 8 (Ch. Div. 1967), aff'd 101 *N. J. Super.* 403 (App. Div. 1968), aff'd 53 *N. J.* 496 (1969).

Furthermore we realize that special problems may arise. The rule we lay down must be given a pragmatic application. Complete equality of treatment may sometimes be impossible, especially where a municipality has followed no

set pattern with respect to past extensions. Nor should a municipality be denied the right to modify an established pattern where altered circumstances reasonably so dictate. Equality of treatment may upon occasion be forced to give way before some supervening public interest. But insofar as such equality can reasonably be achieved this must be done.

The record before us is too inadequate to permit a determination as to whether or not the trial court was correct in granting defendant's motion for summary judgment. There must necessarily be a remand for the submission of more extensive proofs. The defendant seems to take the position that it does not own and operate a water system because it does not construct mains. It does, however, own or have access to a water supply, it owns waterworks, and the distribution system, even if constructed by others, is now the property of defendant and is maintained by it. This is clearly a water utility, municipally owned and operated.

The contention of the Township that it has never constructed water mains is challenged by plaintiff which has appended to its reply brief a copy of an ordinance apparently adopted in 1968 providing for a municipal bond issue in the amount of $125,000 for the purpose of installing "various water lines" along eight named streets in the defendant Township. This, as well as all other relevant facts touching the history and activities of the defendant's utility should be explored by the trial court in the light of what we have said above. We do not retain jurisdiction.

The judgment of the trial court is vacated and the cause remanded for further proceedings consistent herewith.

*For vacation and remand*: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*: None.