928 A.2d 966 (2006)
395 N.J. Super. 411
OCEAN SENIORS, LLC, Plaintiff(s)
v.
TOWNSHIP OF OCEAN SEWERAGE AUTHORITY, Defendant(s).
Superior Court of New Jersey, Law Division.
Decided June 14, 2006.
Ben D. Shiriak, for plaintiff (Shiriak & Timins, attorneys).
Edward A. Kondracki, for defendant.
*967 LEHRER, P.J.Ch.
The plaintiff, Ocean Seniors, L.L.C., is a real estate developer developing age-restricted housing in Ocean Township, Monmouth County, New Jersey. The defendant, The Township of Ocean Sewerage Authority ("Authority") was created by the governing body of the Township of Ocean under the Sewerage Authorities Law N.J.S.A. 40:14A-1 to -45. The Authority provides sanitary sewer collection, treatment, and disposal services to individual residential and commercial customers within its service area in Ocean Township.
The Authority has entered into bulk treatment service agreements with the adjoining municipalities of Deal, Interlaken, Allenhurst and Loch Arbour (the "Customer Communities") under which the Authority treats sewage delivered to it by the Customer Communities through collection systems owned and maintained by the respective Customer Communities.
The Authority does not have individual customers within the Customer Communities, but instead, charges each Customer Community at a bulk rate based on the volume of sewage delivered by that Customer Community to the Authority through its point of interconnection. Collectively, the Customer Communities generate approximately 1.343 million gallons per day (mgd) of sewage flow, while approximately 4.556 mgd are generated within the Township of Ocean.
On May 14, 2001, Ocean Seniors received preliminary and final approval from the Ocean Township Planning Board for 124 age-restricted apartments known as Primrose Place at Ocean (the "Project"). The Project is located exclusively within the Township of Ocean.
On March 20, 2001, Ocean Seniors applied to the Authority for sewer service to the Project, estimating the sewage flows from the Project would be 27,000 gallons per day. Ocean Seniors also prepared an application to be submitted though the Authority to the New Jersey Department of Environmental Protection ("NJDEP") for Treatment Works Approval ("TWA") to construct the required sanitary sewer extension. On July 11, 2003, NJDEP issued a TWA permit for a flow of 27,000 gallons per day for the sanitary sewer extension for the Project.
In accordance with the requirements imposed by statute, the Authority reviews its sewer connection fees annually. The applicable review for the purpose of this decision occurred on May 4, 2004.
At the May 4, 2004, public hearing, the Authority called David A. Kaplan as its witness. Kaplan is a certified public and registered municipal accountant. He has been the auditor for the Authority for approximately twenty years. Kaplan performed a study to determine the average daily water usage for a single-family residence in Ocean Township during the period December 1, 2002 through November 30, 2003. Kaplan reviewed water use figures provided by New Jersey American Water Company, and, based upon a representative sample of 184 single-family residences in Ocean Township, determined that the average daily water usage in 2003 for a single-family residence in the Authority's district was 237 gallons per day. Water use figures within the Customer Communities were not used in the study.
Kaplan then calculated the water usage of all customers within Ocean Township during the study period and found the average to be 3,550,768 gallons per day. Using 237 gallons per day per service unit, Kaplan determined that, pursuant to the statutory formula, there were 14,973 service units in the Authority's district.
Kaplan then calculated the Authority's capital base by adding all debt service *968 payments (principal and interest) made by the Authority to defray the capital cost of developing the sewer system through the end of the prior fiscal year, together with all reserve funds and capital expenditures paid in cash for the development of the sewer system through the end of the prior fiscal year. Kaplan excluded any grants that may have been received and any other items that the statute required be excluded.
According to Kaplan, the capital base of the sewerage system as of the end of the prior fiscal year was $51,842,075. Kaplan did not calculate the amount of the annual service charges from the Customer Communities that may have been used by the Authority for capital expenditures or debt service, nor did Kaplan make that calculation for the customers within Ocean Township.
Kaplan then divided the capital base by the number of service units to arrive at a connection fee of $3,462.00 per equivalent dwelling unit, which includes the apartments located and in Ocean Seniors project. He further divided that connection fee by the 237 gallons per day to arrive at a connection fee of $14.60 per gallon/per day for non-residential customers.
Ocean Seniors, as did every developer in Ocean Township, constructed, at its own cost, the sewerage facilities necessary to extend sanitary sewer service from the nearest feasible point of connection. Once completed, these improvements are dedicated to the Authority to become part of the public sewer system. The cost of these improvements was not included in the capital base of the Authority for calculation of future connection fees. Ocean Seniors was treated the same as all other developers.
Plaintiff argues that the failure to include the sewage flows from the Customer Communities in the calculation is unfair to new connectors within Ocean Township, as it places an excessive burden on those connectors. The court does not agree. The method utilized by the Authority in calculating service units is not only required by statute, but also places new connectors within Ocean Township on exactly the same footing as all prior connectors to the Authority's system.
The connection fee statute requires the Authority to divide the capital base by the total number of service units served by the Authority at the end of the immediately preceding fiscal year to determine the connection fee per service unit. N.J.S.A. 40:14A-8(b)(3) provides:
In attributing service units to each connector, the estimated average daily flow of sewage for the connector shall be divided by the average daily flow of sewage for the average single-family residence in the authority's district to produce the number of service units to be attributed.
[(Emphasis added).]
The term "district" is defined in N.J.S.A. 40:14A-3(6) as the territorial boundary of the municipality which created or joined in the creation of the sewerage authority. Here the district is Ocean Township.
The Authority does not have "service units" outside of Ocean Township. Pursuant to N.J.S.A. 40:14A-23, the Authority entered into bulk treatment agreements with the adjoining municipalities of Deal, Interlaken, Allenhurst, and Loch Arbour. This agreement requires the Authority to treat sewage delivered to it by the Customer Communities through collection systems owned and maintained by the respective Customer Communities.
The Authority does not have individual customers within the Customer Communities, *969 but instead, charges each Customer Community a bulk rate based on the volume of sewage delivered by that Customer Community to the Authority through its point of interconnection. The Authority customer is the municipality itself for bulk treatment.
Any "connector" in the Customer Communities is not a customer or "service unit" of the Authority, nor is it subject to the Authority's rate schedule. That connector is a customer of the Customer Community. Each "connection" made by the "connector" is to the sewerage system of the Customer Community, not Ocean Township. Each Customer Community maintains the sewerage collection system that services its customers. Each Customer Community is free to charge its own customers according to its own rate schedule and is not bound by the Authority's rates. As a result, Ocean Township has no "service units" within the Customer Communities of Deal, Interlaken, Allenhurst, and Loch Arbour.
The Customer Communities and their users do not pay connection fees to Ocean Township. This contractual arrangement conforms to the mandates of N.J.S.A. 40:14A-23, and was entered into in the 1960s. This arrangement pre-dated the connection fee formula of N.J.S.A. 40:14A-8, which went into effect in approximately 1985. It is undisputed that the only customers who have ever paid connection fees to the Authority are the customers in Ocean Township.
In Airwick Indust., Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107, 122, 270 A.2d 18 (1970), the New Jersey Supreme Court emphasized the need for equality in setting connection fees. The Court held that an authority may "include as part of the connection fee a sum of money which will represent a fair contribution by the connecting party towards the debt service charges theretofore made by others."
In White Birch Realty Corp. v. Gloucester Twp. Mun. Util. Auth., 80 N.J. 165, 171, 402 A.2d 927 (1979), the Court again stressed the need for equality between new customers and prior connectors. It restated its prior holding "that a connector was obligated to pay its proportionate share of the cost of the system so that a new customer would stand on a footing comparable to existing customers."
In the Statement accompanying S1487 (the statutory formula for connection fee bills), the Legislature expressed its intent to: "follow the direction of the courts of this state that authorities may include, as part of a connection fee, an amount to represent a fair contribution by the connecting party toward the capital costs of the system previously met by users of the system."
The clear direction given by the Supreme Court and the Legislature is that each new connector should pay a connection fee that makes a fair contribution toward the capital costs of the system previously met by other customers.
By virtue of an agreement that pre-dated the connection fee formula by nearly 20 years, only the customers of the Authority in Ocean Township pay connection fees; users within the Customer Communities do not pay connection fees to the Authority. The prior customers in Ocean Township have paid connection fees as their fair contribution towards the capital costs of developing the sewer system. If the same procedure is not applied to plaintiff, the clear concepts expressed by the Supreme Court and the Legislature will be violated as plaintiff will not make the same contribution towards the debt service previously made by others.
*970 In Warrenville Plaza, Inc. v. Warren Twp. Sewerage Auth., 230 N.J.Super. 461, 472, 553 A.2d 874 (App.Div.1989), the Appellate Division held that to allow the plaintiff to use a different basis for calculating connection fees applied to all other customers "would place all other users who would be assessed, in accordance with the authority's policy, . . . in a position of subsidizing [the plaintiff's] obligation to pay its fair share considering the manner it chose to develop its property." To permit connection fees to be imputed to the Customer Communities would place plaintiff in a better position then those customers in Ocean Township who previously contributed to the capital costs of developing the system, contrary to statutory and case law.
N.J.S.A. 40:14A-8(c) requires that the schedule of service charges of a sewerage authority must comply with the terms of any contract of the sewerage authority. However, contracts entered pursuant to N.J.S.A. 40:14A-23 by a sewerage authority with any other municipality for sewer service need not comply with the schedule of charges promulgated under N.J.S.A. 40:14A-8. See Middlesex County Sewerage Auth. v. Borough of Middlesex, 74 N.J.Super. 591, 181 A.2d 818 (Law Div. 1962), aff'd, 79 N.J.Super. 24, 190 A.2d 205 (App.Div.1963), certif. denied, 40 N.J. 501, 193 A.2d 138 (1963). Contracts with the Customer Communities that do not provide for the Customer Communities, or their users, to pay connection fees to the Authority are authorized by statute. See N.J.S.A. 40:14A-23.
In Canterbury Prop., Inc. v. Municipal Util. Auth. of Mt. Laurel Twp., 124 N.J.Super. 448, 456-457, 307 A.2d 630 (App.Div.1973), the Appellate Division rejected a claim that "the statutory requirement of uniformity prohibits the Authority from assuming agreements which exempt certain property owners from connection fees." The court accepted the direction given by the Supreme Court that "a pragmatic test must be applied in the interpretation of the requirement for uniformity."
In Deerfield Estates, Inc. v. Twp. of E. Brunswick, 60 N.J. 115, 132-133, 286 A.2d 498 (1972), the New Jersey Supreme Court stated:
Furthermore we realize that special problems may arise. The rule we lay down must be given a pragmatic application. Complete equality of treatment may sometimes be impossible, especially where a municipality has followed no set pattern with respect to past extensions. Nor should a municipality be denied the right to modify an established pattern where altered circumstances reasonably so dictate. Equality of treatment may upon occasion be forced to give way before some supervening public interest. But insofar as such equality can reasonably be achieved this must be done.
Clearly, the courts have upheld contracts, such as the one at issue which trump the rate provisions of N.J.S.A. 40:14A-8.
Ocean Seniors also relies upon an unpublished 2004 Law Division decision (Lake Lenore Estates v. Twp. of Parsippany, MRS-L-69-97) in which the court held that service units of the customer communities must be included in the total service units. The court does not agree.
An analysis of that case supports the Authority's position that what constitutes "the total number of service units served by the authority" is a fact sensitive issue that is to be determined on a case-by-case basis.
The law mandates individual solutions for unique situations. One authority may provide sewer service directly to customers in four surrounding municipalities. That authority may bill those customers *971 directly, may charge a connection fee for new connections in those municipalities, and may, in general, provide sewer service directly to the customers in the surrounding communities. Under those circumstances, it would be clear that the customers in the neighboring municipalities should be considered as service units of the authority. Here, however, the extreme opposite factual situation exists.
The Authority provides sanitary sewer collection, treatment, and disposal services to individual residential and commercial customers within its service area in Ocean Township. The Authority also has entered into bulk treatment service agreements with the adjoining municipalities of Deal, Interlaken, Allenhurst, and Loch Arbour. The Authority does not have individual customers within the Customer Communities, but instead, charges each Customer Community directly at a bulk rate based on the volume of sewage delivered by that Customer Community to the Authority through its point of interconnection.
The court cannot approve an overbroad, all-encompassing definition that may be at odds with the facts in any given situation. Some authorities accept and treat leachate (the liquid waste that leaks from landfills) or septage (the liquid waste that is pumped out of septic systems) at their treatment facilities. These wastes are generally brought in by truck. There are no connection fees involved with such wastes because there are no "connections." The flows may be temporary in time and variable in quantity. Leachate and septage customers should not be deemed "service units."
Which customers constitute a "service unit" for connection fee calculations must be determined under the given facts of each case. Deerfield Estates, supra, 60 N.J. 115, 286 A.2d 498.
Unlike Lake Lenore, the Authority's agreements with its Customer Communities were entered into in the 1960s and pre-dated, by nearly twenty years, the 1985 connection fee formula in N.J.S.A. 40:14A-8. The agreements clearly show that there was never an intent by either the Authority or Customer Communities to consider the individual users in those Customer Communities as "service units" of the Authority. The Authority never recognized the customers within the Customer Communities as Authority customers; it never billed the individual customers within the Customer Communities; it never maintained the sewer mains into which those individual customers are connected; it never responded to service calls by the individual customers in the Customer Communities; it never regulated the connections made in the Customer Communities; and it never charged connection fees to or in the Customer Communities.
There was neither an original intent nor subsequent action by the Ocean Township Sewerage Authority to treat or consider the users in the Customer Communities as "service units." The connection fee statute, enacted in 1985, did nothing to change the twenty-year preceding history.
Plaintiff argues that Airwick and White Birch have been superseded by the 1985 connection fee statute. The court agrees only to the extent that the connection fee statute established an outline of a formula to develop connection fees. The connection fee statute did not define "service units" or how the "total number" was to be determined. In fact, the Statement to S1487 indicated that the connection fee statute intended to "follow the direction of the courts" and to establish a system whereby the connection fee represents the contribution towards "the capital cost of the system previously met by users of the system." The basic premise of Airwick, *972 and White Birch, that new customers should stand on a footing comparable to existing customers, is still the law. See Nestle USA v. Manasquan River Reg'l Sewerage Auth., 330 N.J.Super. 510, 513-14, 750 A.2d 157 (App.Div.), certif. denied, 165 N.J. 604, 762 A.2d 219 (2000).
The court finds factually and legally that the Authority never had, and does not now have, "service units" outside of Ocean Township. It has included the "total number of its service units" in its connection fee calculation, and that calculation is correct. The Authority has treated all customers equally, including Ocean Seniors, within the letter and spirit of the law.