Zehman Construction Co., Plaintiff-Appellant, v. Eastlake (City), et, Defendants-Appellees.

Ohio Appeals, Seventh District, Lake County.

No. 692.    Decided December 3, 1962.

Messrs. Persky & Loeb, for plaintiff-appellant.
Mr. Wayne R. Milburn, for defendants-appellees.

(Skeel, J, of the Eighth Appellate District, sitting by assignment in the Seventh Appellate District.)

Skeel, J.    This appeal comes to this court on questions of law from a judgment for the defendants-appellees entered by the Common Pleas Court of Lake County.    The action is one

seeking a declaratory judgment to the effect that a "tap-in charge" ordinance, preventing connections to a sanitary sewer located in the public street on which plaintiff's several lots (19 in number) face until a "tap-in charge" of $350.00 per connection is paid, is void as contrary to law and unconstitutional on the undisputed facts of this case.

The plaintiff and its predecessors in title to the property in an allotment development known as "Eastlake Gardens Subdivision" in which plaintiff's lots are located, contracted with the City of Eastlake to install, at the developers expense, all public improvements (water mains, storm and sanitary sewers, sewage disposal plant, grading, paving and the like). The plat for the allotment was accepted by the City on April 17, 1956. The improvements were constructed, including the sanitary sewer system, and the sewage disposal plant, and fully paid for by the developer as per its contract with the City. The streets were then dedicated and accepted by the City and the property, encompassed by the streets and that occupied by the sewage disposal plant, and a recreation area were deeded and accepted by the City. Prior to concluding the controversy between the developer of the allotment and the City of Eastlake, many, if not all, of the lots retained by the developer, as subdivided, were improved by the construction of dwelling houses, which construction included separate connections for each dwelling to the sanitary sewer serviced by the sewage disposal plant. Twelve of plaintiff's thirty lots were thus improved, and the sewer connection made. One of the claims of the City against the developer was for the expense (said to be about six thousand dollars) of operating the sewage disposal plant while it was still the property of the developer.

Shortly before the litigation between the developer and the City was concluded, which settlement included payment to the City of the estimated expense of operating the disposal plant of about five thousand dollars, at which time the City accepted and dedicated the streets (two in number) of the allotment and took title to the land, including that portion upon which the sewage disposal had been constructed and a six acre recreation area, the City passed an ordinance (the subject of this action)

providing for a "tap-in charge" of three hundred fifty dollars to be paid for a sewer connection to the sanitary sewer for each lot in the Eastlake Gardens Subdivision upon application made subsequent to its passage. The ordinance recites, in part:—

First: That the Council has made provision by the levy of a sewer tax for the operation and maintenance of the Eastlake Gardens Subdivision Sewage Treatment and Disposal Works.

Second: That it is deemed necessary to require owners of undeveloped lots, whose property is thus specially benefited and who desire to tap into a sewer, conducting sewage to such treatment plant, to pay a tap-in charge upon making application for such connections.

Third: That it shall be unlawful for any property owner to make connection from abutting premises to a sanitary sewer carrying sewage to the Eastlake Gardens Sewage Treatment Plant without obtaining a permit upon an application signed by the property owner or his agent for which a charge of Three Hundred Fifty Dollars shall be made. Such tap-in may then be made under the direction of the Director of Public Service of the City to whom the application must be made.

Fourth: All tap-in charges and assessments, when received, shall be paid into the Sewer Fund (of the City) "to be used (1) for the payment of the city's portion of any sewer improvement, (2) for the payment of obligations of the city for any sewer improvement or (3) for enlargement, repairing, and maintenance of the sewer system as may be appropriated by the Council."

The undisputed facts are that all of the improvements, including the sanitary sewers and the sewage disposal plant, as provided by the contract, were installed and completely paid for by the developer before such system, as well as all other street improvements, was accepted and the City assumed responsibility for its (the disposal plant and sewer system) operation and maintenance. The inescapable deduction from such fact is that the cost of such development was included in the sales price of the lots in the Eastlake Gardens Subdivision. This being so, the plaintiff paid its share of such costs as a part of

the amount paid for its thirty lots. The City did not expend any of its funds for such improvements. It is also clear that by the provisions of the ordinance, the cost of operating and maintaining the sewers in the allotment and the disposal plant is provided for by a tax levy. Likewise, the charge for the tap-in, if paid by the plaintiff as assessed against its undeveloped lots, is to be used not for the cost of supervising the tap-in construction but is to be appropriated by councilmanic action for other sewer improvements of the City.

Under these circumstances, the cases relied on by the City are not in point and are clearly distinguishable. The case of *State, ex rel. Stoeckle* v. *Jones*, 161 Ohio St., 391, 119 N. E. (2d), 834, was an action in mandamus. The relator was seeking a writ directing the respondent to issue a permit to install a sewer connection upon the payment of a five dollar tap-in fee. The respondent was demanding a three hundred dollar tap-in fee as provided by an ordinance passed subsequent to the ordinance providing a general permit fee, in such case of five dollars. This ordinance was passed July 8, 1952. The second ordinance was adopted on December 16th of that year for the purpose of securing an equitable apportionment of the cost of constructing the village sewer system (see page 392 of the opinion). The facts, as stated in the opinion, are that the cost of the sewer system of the Village of Loveland, Ohio, was met, in part, by the issuance of mortgage bonds and, in part, by a special levy figured on the then tax duplicate valuation. At that time the relator's property, being unimproved, had a valuation of seventy dollars, but when he built his house, after the assessment of the special levy, his tax value was increased to three thousand seven hundred and ten dollars, which if that had been the valuation of his property when the sewer levy was assessed, he would have been required to pay four hundred thirty-five dollars and eighty-four cents, instead of the nominal eight dollars and nineteen cents, which he actually paid. The provisions of the tap-in ordinance, as shown on page 393 of the opinion, were, in part:—

"* * *

"(a) Owners of property improved subsequent to the

passage of resolution No. 1951-20 on October 16, 1951—$300.00.''

These facts make it abundantly clear that the purpose of the ordinance fixing a three hundred dollar tap-in fee was to equalize the cost of the improvement upon all property owners using the sewer system. The Supreme Court in the syllabus said:—

''Where a municipality levies special assessments on a tax duplicate valuation basis to meet the cost of constructing a sewer system, an ordinance is not invalid which imposes a reasonable charge for the issuance of connection permits to owners whose subsequently improved property was assessed on its unimproved valuation. (*Hermann* v. *State, ex rel. Cooper*, 54 Ohio St., 506, approved and followed.)

The *Hermann case* (54 Ohio St., 506, 43 N. E., 990), provides in the syllabus:—

''Where by municipal authority, a system of sewers is constructed with a view to assessing a portion of the costs thereof equally upon the abutting property, and a portion of the assessments are paid and a portion successfully resisted, a rule requiring as a condition to the use of the sewer that those who so resisted shall pay a sum equal to that paid by others toward its construction is not unreasonable.''

And on page 508 of the opinion, the court said:—

''The rule in question was adopted and properly conditioned to require that those who had not paid assessments should, when desiring to use the sewer, accept an equal burden with those who had. We cannot say that the rule is unreasonable.''

We come, therefore, to the question of whether or not a tap-in charge of three hundred fifty dollars in a case where the property owner has contributed his full share of the cost of the improvement and the charge is far in excess of the nominal cost of issuing the permit and of satisfying the Service Director of the competency of the person who will do the work and in seeing to it that code regulations are followed and where all of the revenue from such tap-in charge is directed by the ordinance to be expended for the purposes completely foreign to and without conferring a benefit on the property involved is a proper exercise of legislative authority. To state the proposition is

clearly to negate the right to levy such tax against the property of the relator.

We conclude, therefore, that as to the relator's property, the ordinance is unconstitutional and void. The judgment is, therefore, reversed and final judgment entered for the plaintiff.

BROWN, P. J., and DONAHUE, J, concur.