**BANBERRY DEVELOPMENT CORPORATION, McKean Construction Company, Midwest Realty and Finance, Inc., a Utah corporation, Plaintiffs and Respondents,**

v.

**SOUTH JORDAN CITY, a municipal corporation, Defendant and Appellant.**

No. 16872.

Supreme Court of Utah.

June 3, 1981.

Michael J. Mazuran, Salt Lake City, for defendant and appellant.

John H. McDonald, Craig S. Cook, Salt Lake City, for plaintiffs and respondents.

OAKS, Justice:

This is a suit by three subdividers against a city to challenge the validity of water connection and park improvement fees imposed as a condition to connection to the city water main and as a condition to final approval of the subdividers' plat. At issue in this appeal are the legality of any such fees, and, if they are legal, the criteria for judging their reasonableness.

The procedure for charging the park improvement fee does not appear in the record. City Ordinance 13–1–5, which the subdividers concede was lawfully enacted and constitutional, requires a subdivider who desires to connect to the city water system to enter into an agreement "specifying the terms and conditions under which the water extensions and connection shall be made and the payment that shall be required." Paragraph 10 of the agreement form adopted by the city and required of all subdividers before plat approval obligates the subdividers to pay the entire cost of all water lines required to service the subdivision, including extensions from existing water mains and all connecting lines within the subdivision. It also provides that "the City shall charge the Applicant a connection fee in the amount of $_____ for each individual dwelling unit to be served within the subdivision, which sum shall be payable in full to the City before the subdivision system is connected to any existing City water mains." The required connection fee was $800 for a ¾-inch line and $1,000 for a 1-inch line.

Objecting that the collection of the water connection fees in advance from the developer constituted an unlawful tax and an unconstitutional taking of property without due process, the subdividers sought injunctive relief. They challenged the city's park improvement fee of $235 per lot on the same basis. They also attacked both fees as discriminatory.

On motions in advance of trial, the district court (1) sustained the validity of the park improvement fee and granted the city's motion to dismiss as to it, and (2) held the advance collection of the water connection fee contrary to statutory law, granted the subdividers' motion for summary judgment, and permanently enjoined the city from its enforcement. Both the city and the subdividers have appealed.

## I.
## THE VALIDITY OF WATER CONNECTION AND PARK IMPROVEMENT FEES

■ The district court ruled that the advance collection of the water connection fee was rendered illegal by the combined effect of U.C.A., 1953, § 10–8–38 and § 17–6–22. Section 10–8–38 empowers the city, for the purpose of defraying costs of construction or operation of a sewer system, to require mandatory hookup and payment of charges when a sewer is available and within 300 feet of any property containing a building used for human occupancy. Section 17–6–22 provides that a municipal corporation which contracts with an improvement district for sewage services shall have authority to make service charges to parties who connect to its sewer system. If the municipality also operates a waterworks system, the section provides that these charges "may be combined with the charge made for water furnished by the water system and may be collected and the collection thereof secured in the same manner as that specified in Section 10–8–38, Utah Code Annotated 1953."

Because § 10–8–38 does not authorize the charging of a sewer connection fee in the case of vacant lots, and because § 17–6–22 provides that the city *may* collect water fees in the same manner as § 10–8–38 authorizes for the collection of sewer fees, the combination of these two statutes is urged to *forbid* cities from collecting water fees in circumstances not authorized for sewer fees. This does not follow. Section 17–6–22 is permissive, not mandatory. It poses no statutory prohibition against the collection of a water connection fee from a subdivider for each lot in a subdivision at the time the subdivision is hooked up to the city water system.

The validity of a sewer connection fee to raise money to enlarge and improve a sewer system was sustained by this Court in *Home Builders Ass'n v. Provo City*, 28 Utah 2d 402, 503 P.2d 451 (1972), discussed hereafter. In a decision issued after the trial court acted in this case, we sustained a municipality's power to withhold the privilege of city water service until a landowner had paid a valid municipal sewer connection fee. *Rupp v. Grantsville City*, Utah, 610 P.2d 338 (1980). In two other decisions issued after the trial court acted in this case, we sustained a municipality's requirement that subdividers dedicate a portion of subdivision land for recreational purposes (or pay cash in lieu) as a condition of final approval of their plat. *Call v. City of West Jordan*, Utah, 606 P.2d 217 (1979). On rehearing in this same case, we held that the reasonableness of the dedication or cash requirement in a particular case was a question of fact that must be resolved at trial. *Call v. City of West Jordan*, Utah, 614 P.2d 1257 (1980).

These four decisions have resolved the legality of water connection and park improvement fees designed to raise funds to enlarge and improve sewer and water systems and recreational opportunities, as well as the legality of conditioning water hookups or plat approval on their collection. However, these decisions leave open the question of the reasonableness of any individual fee charged or land dedication required. This question of reasonableness must be resolved on the facts in each particular case. We therefore reverse both judgments and remand the entire case for trial

on the reasonableness of the fees the city has imposed in this case.

Because this case is being remanded for trial, it is appropriate for this Court to elaborate on the constitutional standards of reasonableness that should govern the validity of subdivision charges such as these.

## II.
## THE REASONABLENESS OF SUBDIVISION FEES IN GENERAL

Like so many other municipalities in this state, the City of South Jordan confronts the problems of providing a fast-growing city with adequate services for water, sewer, recreation, and other common needs. In 1978, the city had to deal with the development of about 600 lots (including the 400 in subdividers' development), up from about 65 in prior years. Such growth puts a severe strain on the financial and personnel resources of a small municipality, and if not properly managed could well overburden common facilities like water and sewer to the point where their service would deteriorate severely for the existing occupants and be inadequate for the new ones. An appropriate way to provide adequately for such services is by advance planning and financing.

The conventional means of financing municipal facilities are tax revenues, special assessments, and bonding. In addition, in recent years many local governmental units in this country have employed subdivision plat controls to require fees, such as the water and park fees involved in this case, that force developers to contribute to the centralized capital costs of municipal services in addition to the concededly valid localized costs applicable solely to their development. The courts of this state and others have approved the legality of such fees, but are still struggling to define the limits of reasonableness that must be imposed upon their amount.[1] Without legal limits—imposed by statute or constitution—subdivision charges could easily be used to avoid statutory requirements for bonding municipal improvements, statutory limits on municipal taxation, and legal limits on restrictive or exclusionary zoning.

The subdividers argue that the water and park fees far exceed the city's costs in respect to these matters and that the excess would be used in the city's general operating fund. The city maintains in its brief in this Court that the water connection fees would be used to enlarge water lines and storage and pumping facilities, and the park improvement fees would be used to enlarge and develop city parks. The parties differ on whether such an intent was secured by enforceable restriction, such as deposit to a separate fund. These contentions, all relevant to reasonableness, are matters for consideration at trial.

The subdividers also argue that the water connection fee cannot be imposed on the developer, but must be deferred for imposition on the lot owner or homeowner at the time of hookup. We find this argument unpersuasive. This is not a case where the party burdened with the exaction will derive no benefit from it.[2] When the subdivision is connected to the city's water and sewer systems, the city must be prepared to perform its services on demand, and from that fact the subdividers derive immediate benefit. The provision of standby capacity to a subdivision requires the commitment of substantial capital. The city does not have to wait until someone turns on a tap or flushes a toilet before it requires participation in the cost of providing its services. Subject to the requirements of reasonableness discussed below, a hookup fee that requires a subdivider to make advance payment of some portion of the common capital costs attributable to committing service to the lots in the subdivision is valid. The same is true of the park improvement fee.

The proceedings on remand in this case will be governed by two leading decisions of this Court, one dealing with a municipal service that employs an expensive central

1. J. Johnson, "Constitutionality of Subdivision Control Exactions: The Quest for a Rationale," 52 Cornell L.Q. 871 (1967); Heyman & Gilhool, "The Constitutionality of Imposing Increased Community Costs on New Suburban Residents Through Subdivision Exactions," 73 Yale L.J. 1119 (1964).

2. *City and County of Denver v. Greenspoon*, 140 Colo. 402, 344 P.2d 679 (1959).

facility like water or sewer, and the other with a municipal service that employs dispersed resources like recreational land. Though the standards of reasonableness in these two circumstances are essentially the same, their application is somewhat different. The two different types of charges will therefore be discussed separately.

## III.
## REASONABLENESS OF WATER CONNECTION FEE

■ *Home Builders Ass'n v. Provo City*, 28 Utah 2d 402, 503 P.2d 451 (1972), sustained the validity of a sewer connection fee (in addition to the monthly sewer charge) for each living unit of newly constructed buildings connected to an existing sewer system. The fee was imposed in order to improve and enlarge the sewer system. It was not a revenue measure or an assessment, the court found, but "a reasonable charge for the use thereof," as authorized by U.C.A., 1953, § 10–8–38. Significantly, the $100-per-lot charge was derived by dividing the total number of sewer connections in the municipality into the net value of the sewer system, and the funds obtained were to be restricted to the enlargement, improvement, and operation of the sewer system and to the retirement of indebtedness incurred in its construction.

In approving the sewer connection fee in *Home Builders*, this Court relied on *Airwick Industries, Inc. v. Carlstadt Sewerage Authority*, 57 N.J. 107, 270 A.2d 18 (1970). That case approved a connection fee arrangement by which the capital and interest costs of a new central sewage system, although met initially by the actual users, would ultimately be borne by all properties benefited, including lands that were unimproved when the central expenditures were originally made. The municipality did this by including as part of its connection fee what our Court characterized as "a sum of money which would represent a fair contribution by the connecting party toward the expense theretofore met by others." [3]

The *Home Builders* case established the principle upon which the reasonableness of the water connection fee in this case should be judged. The "fair contribution" of the connecting party should not exceed "the expense thereof met by others." Or, as the New Jersey Supreme Court held in a subsequent case, the rules governing the allocation of improvement costs between city and developer

would ideally have been such as to insure, to the greatest extent practicable, that the cost of extending a municipal water facility would fall equitably upon those who are similarly situated and in a just proportion to benefits conferred. They should be sufficiently flexible to permit consideration to be given to the facts and circumstances of each particular case.

*Deerfield Estates, Inc. v. Township of E. Brunswick*, 60 N.J. 115, 286 A.2d 498, 505 (1972). Therefore, where the fee charged a new subdivision or a new property hookup exceeds the direct costs incident thereto (as a means of sharing the costs of common facilities), the excess must survive measure against the standard that the total costs "fall equitably upon those who are similarly situated and in a just proportion to benefits conferred." Stated otherwise, to comply with the standard of reasonableness, a municipal fee related to services like water and sewer must not require newly developed properties to bear more than their equitable share of the capital costs in relation to benefits conferred.

■ To determine the equitable share of the capital costs to be borne by newly developed properties, a municipality should determine the relative burdens previously borne and yet to be borne by those properties in comparison with the other properties in the municipality as a whole; the fee in question should not exceed the amount sufficient to equalize the relative burdens of newly developed and other properties.

Among the most important factors the municipality should consider in determining the relative burden already borne and yet

---

3. *Home Builders Ass'n v. Provo City*, 28 Utah 2d at 405, 503 P.2d at 453.

to be borne by newly developed properties and other properties are the following, suggested by the well-reasoned authorities cited below: (1) the cost of existing capital facilities; (2) the manner of financing existing capital facilities (such as user charges, special assessments, bonded indebtedness, general taxes, or federal grants); (3) the relative extent to which the newly developed properties and the other properties in the municipality have already contributed to the cost of existing capital facilities (by such means as user charges, special assessments, or payment from the proceeds of general taxes); (4) the relative extent to which the newly developed properties and the other properties in the municipality will contribute to the cost of existing capital facilities in the future; (5) the extent to which the newly developed properties are entitled to a credit because the municipality is requiring their developers or owners (by contractual arrangement or otherwise) to provide common facilities (inside or outside the proposed development) that have been provided by the municipality and financed through general taxation or other means (apart from user charges) in other parts of the municipality; (6) extraordinary costs, if any, in servicing the newly developed properties; and (7) the time-price differential inherent in fair comparisons of amounts paid at different times. *Home Builders v. Provo City, supra; Rose v. Plymouth Town,* 110 Utah 358, 173 P.2d 285 (1946); *Airwick Industries, Inc. v. Carlstadt Sewerage Authority, supra; Deerfield Estates, Inc. v. Township of E. Brunswick, supra; West Park Ave., Inc. v. Township of Ocean,* 48 N.J. 122, 224 A.2d 1 (1966); *Rutan Estates, Inc. v. Town of Belleville,* 56 N.J.Super. 330, 152 A.2d 853 (App.Div.1959); *Zehman Construction Co. v. City of Eastlake,* 92 Ohio Law Abst. 364, 195 N.E.2d 361 (Ct.App. 1962); *Strahan v. City of Aurora,* 38 Ohio Misc. 37, 311 N.E.2d 876 (Ct.Com.Pleas, 1973); R. Ellickson, "Suburban Growth Controls: An Economic and Legal Analysis," 86 Yale L.J. 385, 467–89 (1977); F. Michelman & T. Sandalow, *Government in Urban Areas,* 533–36 (1970). In adjudicating the validity of any individual application of this standard of reasonableness, the courts must concede municipalities the flexibility necessary to deal realistically with questions not susceptible of exact measurement. Precise mathematical equality "is neither feasible nor constitutionally vital." *Airwick Industries, Inc. v. Carlstadt Sewerage Authority, supra,* 270 A.2d at 26. Similarly, municipal officials must also have the legal power to deal creatively with extraordinary or unforeseen circumstances in the provision of municipal services. *Rose v. Plymouth Town,* 110 Utah 358, 173 P.2d 285 (1946). We agree with and adopt the New Jersey court's ruling in *Deerfield Estates, Inc. v. Township of E. Brunswick, supra,* 286 A.2d at 507–508:

> The rule we lay down must be given a pragmatic application. Complete equality of treatment may sometimes be impossible, especially where a municipality has followed no set pattern with respect to past extensions. Nor should a municipality be denied the right to modify an established pattern where altered circumstances reasonably so dictate. Equality of treatment may upon occasion be forced to give way before some supervening public interest. But insofar as such equality can reasonably be achieved this must be done.

 The required flexibility will be implemented by the presumption of constitutionality incident to a municipality's exercise of its legislative powers. *Call v. City of West Jordan,* Utah, 614 P.2d 1257, 1258 (1980); *Crestview-Holladay Homeowners Ass'n, Inc. v. Engh Floral Co.,* Utah, 545 P.2d 1150 (1976); *Dowse v. Salt Lake City Corp.,* 123 Utah 107, 255 P.2d 723 (1953). Since the information that must be used to assure that subdivision fees are within the standard of reasonableness is most accessible to the municipality, that body should disclose the basis of its calculations to whoever challenges the reasonableness of its subdivision or hookup fees. Once that is done, the burden of showing failure to comply with the constitutional standard of reasonableness in this matter is on the challengers. *Home Builders Ass'n of Greater*

*Kansas City v. City of Kansas City*, Mo., 555 S.W.2d 832 (1977).

IV.

## REASONABLENESS OF PARK IMPROVEMENT FEE

█ In *Call v. City of West Jordan,* Utah, 606 P.2d 217 (1979), opinion on rehearing, 614 P.2d 1257 (1980), this Court upheld the validity of a city ordinance that required subdividers, as a condition of plat approval, to dedicate certain proposed subdivision land to the city (or pay cash in lieu) for flood control and/or park and recreation facilities. In remanding the case for trial on the constitutionality of the ordinance as applied (i. e., the requirement that seven percent of the subdivision land be dedicated), this Court ruled that "the dedication should have some reasonable relationship to the need created by the subdivision." *Id.* at 1258. The Court quoted the following from *Home Builders Ass'n of Greater Kansas City v. City of Kansas City,* Mo., 555 S.W.2d 832, 835 (1977):

> [I]f the burden cast upon the subdivider is *reasonably* attributable to his activity, then the requirement [of dedication or fees in lieu thereof] is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than a reasonable regulation under the police power.[4]

Reasonableness obviously holds the municipality to a higher standard of rationality than the requirement that its actions not be arbitrary or capricious.

Under the reasonableness test in *Call v. City of West Jordan, supra,* the benefits derived from the exaction need not accrue solely to the subdivision (614 P.2d at 1259); flood control and recreation are needs that cannot be treated in isolation from the rest of the municipality. At the same time, the benefits derived from the exaction must be of "demonstrable benefit" to the subdivision (*Id.* at 1259).

As with water connection fees, the amount of such exactions or fees should be such that the burden of providing these municipal services "falls equitably upon those who are similarly situated and in a just proportion to benefits conferred." *Deerfield Estates, Inc. v. Township of E. Brunswick,* 60 N.J. 115, 286 A.2d 498, 505 (1971). The measurement of "benefits conferred" may have a more significant impact on the reasonableness of park fees than on water connection fees. The central facilities that support water and sewer service would generally confer the same benefits in every part of the municipality, but the benefits conferred by recreational, flood control, or other dispersed resources may be measurably different in different parts of the municipality. Park improvement fees should therefore be fixed so as to be equitable in light of the relative benefits conferred on, as well as the relative burdens previously borne and yet to be borne by the newly developed properties in comparison with the other properties in the municipality as a whole. The fees in question should not exceed the amount sufficient to equalize the relative benefits and burdens of newly developed and other properties.

The factors to be considered in the determination of relative burden are similar to the factors discussed in Part III in connection with water connection fees. The flexibility to be tolerated within the presumption of regularity and the disclosure of the basis of calculation specified in Part III is also applicable to this type of subdivision charge.

The judgments of the trial court are reversed in the appeal and the cross-appeal, and the cause is remanded for proceedings consistent with this opinion. No costs awarded.

HALL and STEWART, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur that the defendant city may lawfully require water connection fees to be paid at the time the main line running through the subdivision is connected to the city system and water is brought to the edge of each lot. I arrive at this conclusion

---

4. *Call v. City of West Jordan,* 614 P.2d at 1259.

in view of the authority invested in cities and towns to "construct, maintain and operate waterworks," § 10–8–14 U.C.A.1953; to "fix the rates to be paid for the water use," § 10–8–22; and to "enact ordinances, rules and regulations for the management and conduct of the waterworks system owned or controlled by it," § 10–7–14. It is not unreasonable to require payment of the connection fee when the water is turned into the main line coursing through the subdivision because at that time the defendant city is obligated to furnish water to each and every lot as requested. In order to prepare to do this, the defendant city had to make capital expenditures to enlarge its capacity so that it could meet the new demands to be imposed upon it. I concur that § 10–8–38 is not a prohibition against advance collection.

I also concur with the criteria of reasonableness contained in Parts III and IV of the majority opinion.

I dissent, however, from the holding in the majority opinion that the city may lawfully impose park improvement fees. I concur with the reasoning of Justice Wilkins in his dissenting opinion in *Call v. City of West Jordan,* Utah, 606 P.2d 217 (1979). The imposition of the park improvement fees is even more offensive in this case since the city conditioned the furnishing of water service to the subdivision upon their payment. To me the two subjects are entirely separate and I believe it to be an abuse of the city's authority to own and operate a waterworks system (a proprietary operation) to use the furnishing of water as leverage to collect fees for other unrelated purposes. Section 10–8–38 authorizes cities and towns to discontinue water service to premises where the sewer service charges have not been paid, but I find no authorization to also deny service until park improvement fees have been paid.

MAUGHAN, C. J., concurs in the opinion of HOWE, J.