**Timothy Ross LAFFERTY, Plaintiff and Respondent,**

v.

**PAYSON CITY, a municipal corporation, Defendant and Appellant.**

**Timothy Ross LAFFERTY, Plaintiff and Appellant,**

v.

**PAYSON CITY, a municipal corporation, Defendant and Respondent.**

**Nos. 17534, 17536.**

Supreme Court of Utah.

Feb. 17, 1982.

---

**9.** Utah, 609 P.2d 1326 (1980).

Dave McMullin, Payson, for defendant and appellant.

Ray M. Harding, American Fork, for plaintiff and respondent.

OAKS, Justice:

This appeal concerns the legality of two fees a municipality imposed on the construction of new homes.

In 1977, Payson City enacted an ordinance requiring the payment of an "impact fee" of $1,000 per family dwelling prior to the issuance of any building permit. The ordinance stated that this fee was necessary because of an emergency situation created by property development within the city limits; the City needed additional revenue to offset the costs of the necessary increases in municipal services. This fee was in addition to all other municipal fees.

In 1979, the City enacted other ordinances increasing the fees the City charged for connecting residences to various city services. The revised amounts included: $1,000 for sewer; $450 for water (¾-inch hookup); $250 for electricity (100 amp service). Plaintiff Lafferty, a city resident

who apparently desired to construct a single-family dwelling, paid the impact fee and the connection fees under protest and then brought this suit for a declaration that these fees were taxes that were illegal and discriminatory under the state and federal Constitutions, for an injunction against their enforcement, and for restitution of the $2,725 he had paid.

## I. THE IMPACT FEE

As to the impact fee, the district court granted plaintiff's motion for summary judgment, holding that the fee was discriminatory in its imposition on new homeowners and not on existing ones, and illegal as a tax not authorized by law. In No. 17534, the City appeals from that decree.

The district court relied on *Weber Basin Home Builders Association v. Roy City*, 26 Utah 2d 215, 487 P.2d 866 (1971), where this Court invalidated an increase in a building permit fee on the basis that it was an illegal tax. The opinion notes that the purpose of the increase was to obtain additional money for the City's general fund, into which the proceeds were deposited. As in this case, the defendant city contended that the additional funds were needed to finance improvements in the city's water and sewer systems necessitated by new home construction.

■ Subsequent decisions have approved connection fees or subdivision fees, subject to the reasonableness limitations discussed hereafter. *Banberry Development Corp. v. South Jordan City*, Utah, 631 P.2d 899 (1981); *Call v. City of West Jordan*, Utah, 606 P.2d 217 (1979); *Home Builders Association of Greater Salt Lake v. Provo City*, 28 Utah 2d 402, 503 P.2d 451 (1972). But in each of these cases, the fees were imposed to finance a specific municipal service or capital expenditure. The

*Weber Basin Home Builders* case was distinguished on the basis that a reasonable charge for a specific service is permissible, whereas a general fee that amounts to a revenue measure is not. *Home Builders Association of Greater Salt Lake*, 28 Utah 2d at 404, 503 P.2d at 452. We reaffirm that distinction, and agree with the district court's conclusion that the impact fee deposited in the City's general revenues in this case is an illegal tax.[1] *Weber Basin Home Builders Association v. Roy City, supra*. The partial summary judgment the City has challenged by its appeal in No. 17534 is therefore affirmed.

## II. CONNECTION FEES

■ The district court denied plaintiff's motion for summary judgment on the alleged facial invalidity of the various connection fees, and put plaintiff to trial on the reasonableness of those fees. That was the correct procedure. *Banberry Development Corp. v. South Jordan City, supra; Home Builders Association of Greater Salt Lake v. Provo City, supra.*

At the conclusion of trial, the court made findings on the per-unit cost of the three services. In each case, the per-unit costs were substantially in excess of the amount of the connection fees. The court therefore concluded that the connection fees were valid because they were "reasonable and represent the cost of creating, maintaining and using the aforesaid utilities." In No. 17536, plaintiff appeals from that decree.

Six months after the district court's decree, this Court issued its opinion in *Banberry Development Corp. v. South Jordan City, supra*, which involved water connection fees and park improvement fees. In that case, we outlined "the constitutional standards of reasonableness," 631 P.2d at 903, that govern the validity of connection

---

1. It appears from the City's answers to interrogatories and requests for admissions that the City has collected $98,000 by its impact fee, which sum the City has allocated for capital improvements in the following areas: electrical, 20%; sewage treatment plant expansion, 60%; and water, 20%. But these allocations (some now expended and some not) do not alter our conclusion. The validity of a fee imposed to augment general revenues is determined by its legal status at the time it is exacted, without regard to how the funds are later allocated or spent. This is not a case like those involving connection fees, where the ordinances imposing the fees designated the collections for specific uses.

fees charged by municipalities. Plaintiff contends that this decree must be vacated and the case remanded for reconsideration in light of *Banberry* because the district court's decision that the three connection fees were reasonable was based on only part of the factors this Court subsequently outlined in *Banberry*. We agree.

■ The *Banberry* opinion identifies seven important factors that should be considered "in determining the relative burden already borne and yet to be borne by newly developed properties and other properties . . . ." 631 P.2d at 903–4. In brief, those factors are (1) the cost of existing capital facilities; (2) the means by which those facilities have been financed; (3) the extent to which the properties being charged the new fees have already contributed to the cost of the existing facilities; (4) the extent to which they will contribute to the cost of existing capital facilities in the future; (5) the extent to which they should be credited for providing common facilities that the municipality has provided without charge to other properties in its service area; (6) extraordinary costs, if any, in serving the new property; and (7) the time-price differential inherent in fair comparisons of amounts paid at different times. 631 P.2d at 904.

■ The objective of the complicated comparison in *Banberry* is to assure that municipal fees pertaining to newly developed properties do not require them to bear more than their equitable share of the capital costs (in comparison with other properties) in relation to benefits conferred. If properly applied, those seven factors should put the new homeowner on essentially the same basis as the average existing homeowner with respect to costs borne in the past and to be borne in the future, in comparison with benefits already received and yet to be received. The municipality has the burden of disclosing the basis of its calculations to whoever challenges the reasonableness of the fees, and its allocations need not achieve precise mathematical equality. *Banberry*, 631 P.2d at 904.

■ The City's brief in this case states that the increases in connection fees were based on the costs of expansion by future construction in the service areas involved. Thus, the expert evidence on the unit cost of water and sewer services was based on the 1979 cost of constructing the expansion facilities needed in those areas. That measure does not achieve the equitable allocation sought in *Banberry*, since it fixes the entire cost of new facilities on newly developed properties without assurance that these costs are equitable in relation to benefits conferred and in comparison with costs imposed on other property owners in the municipality. For example, if the costs of maintenance and repayment of bonded indebtedness for construction of the existing system are being financed by general tax revenues, service fees, or other payments collected from the entire municipality—including the newly constructed homes—the new homes will be burdened with all of the capital costs of expanding the service capacity plus a portion of the costs of the existing one. In an effort to avoid this kind of unfairness, the seven factors in *Banberry* require a different approach than imposing all costs of expansion of capacity on the newly developed properties.

■ The expert evidence on the unit cost of electrical services was based on the replacement cost in 1979 of the municipality's existing electrical system. If appropriately discounted for the age and condition of the existing system, that measure would satisfy one of the factors in *Banberry*, but would be incomplete without inquiry into the other factors, such as how the existing system was financed. This is necessary, for example, to assure that a property owner involved in a new home development is not required to buy into the capital value of existing municipal services and then pay for some portion of the same capital value a second time by future tax payments against the bonded indebtedness used to construct them originally.

Since not all of the factors set out in this Court's intervening opinion in *Banberry Development Corp. v. South Jordan City, su-*

*pra*, were considered in ruling on the reasonableness of these municipal fees, we deem it appropriate to vacate the decree of the district court in case No. 17536 and remand for further proceedings (including the taking of additional evidence, if necessary) consistent with *Banberry* and with this opinion.

*So ordered.* Each party to bear own costs.

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.