Timothy J. KREIFELS and Celeste I. Kreifels; Floyd L. Sayles and Patricia A. Sayles; David George Stilley and Connie Jo Stilley; Morris Vermuelen and Constance Vermuelen; Kassen F. Duis and Karen Duis; and John Coons, Appellees,

v.

SOUTH PANORAMA SANITARY DISTRICT, Appellant,

and

the Guthrie County Board of Supervisors, Defendant.

No. 90–793.

Supreme Court of Iowa.

Sept. 18, 1991.

William J. Lillis and Douglas A. Fulton of Connolly, O'Malley, Lillis, Hansen & Olson, Des Moines, for appellants.

Brett I. Anderson, West Des Moines, for appellees.

HARRIS, Justice.

Affected property owners brought this suit to challenge assessments imposed by the trustees of a sanitary drainage district. Connection fees were fixed at varying rates, depending on time the connections were made. We agree with the district court that the assessments were unfair. We therefore affirm its judgment declaring a section of the ordinance void and unenforceable.

Lake Panorama is an extensive residential development surrounding a lake in Guthrie County. Defendant South Panorama Sanitary District was formed in 1985. Before then the area had no central sewage system; the property owners relied on private, separate systems.

A separate system consists of a septic tank with attached laterals. The laterals' purpose is to drain off effluent from the septic tank. Before installation of such a system, the soil is tested for percolation. This test shows permeability of the soil. The lower the permeability, the longer the laterals required to dispose of the effluent. In certain circumstances the soil lacks permeability altogether so that laterals will not function. Sand filters are then required.

Filters vary in size according to the dimensions of the dwelling. Guthrie County board of health regulations outline the specific requirements for the systems. These requirements address, for example, the size of the system, restrictions on use of garbage disposals, the type of pump system, the rock used, and the collector line which terminates at some drainage point, probably the lake.

The sanitary district was formed when it was discovered that more than one-third of the septic systems were failing. *See* Iowa Code ch. 358 (1991).[1] The district immediately began plans to build a central sanitary sewer collection system to collect the effluent from the private septic tanks of each residence within the district. This system, completed in late 1988, was mandatory and eliminated the need for laterals.

A $1500 connection fee was contemplated from the beginning. The trustees decided however that $1500 would be too much of a financial burden for owners who had previously spent much more than that to install private systems. The trustees thus decided that the $1500 connection fee should apply only to houses "under construction or constructed after January 1, 1986." A connection fee of only fifty dollars was to be charged for systems in place prior to then. The ordinance as finally adopted provided:

> The following connection fees must be paid before a permit issues:
> 1. On lots where complete septic tank improvements have been prepared and entirely installed prior to January 1, 1986, a connection fee of $50.
> 2. On any lot where sanitary septic tanks have been installed together with lateral systems or portions of lateral systems, from and after January 1, 1986, a connection fee of $1500.
> 3. On any lot which heretofore has been unimproved and which is unimproved on the date of the enactment of this ordinance, a connection fee of $1500.

[1] All relevant statutory provisions have remained unchanged through this litigation.

Plaintiffs are owners of lots within the district. They either acquired or owned property, and were engaged in the construction of homes on their lake lots between January 1, 1986, and July 1988.

Because of the imminence of the district system, owners were given a cost-saving concession. They were allowed to use inadequate private systems until the central system was in place. This considerable variance from the usual regulations was tolerated to avoid duplication of expenses for old systems or additional expenses to these plaintiffs who, in building new ones, would otherwise be required to install extensive laterals.

An uncomplicated sand filter system for a three-bedroom home in the area would cost $4000. Laterals would cost four dollars per foot. A $1500 connection fee is considerably less than the cost of constructing purely private systems. Plaintiffs' claim of unfairness is not derived from comparing the $1500 fee with the cost of a complete private filter system. The claim is derived from a comparison of the $1500 fee with the fifty-dollar fee charged to homeowners whose systems, regardless of adequacy, had been installed prior to January 1, 1986. Stated otherwise, the claim is not that the $1500 connection fee is too high, but that it is too high in comparison with others who were charged only fifty dollars.

Plaintiffs asked the court to review and determine the validity of the ordinance and to declare the portion regarding the fee unjust, illegal, unwarranted and therefore invalid. The trial court filed a careful ruling which reviewed in detail the trustees' possible authority to assess a connection fee under various sections in Iowa Code chapter 358. It is unnecessary, and therefore we deem it inappropriate, to review a number of the trial court's conclusions. The appeal is controlled by the trustees' clear authority to charge a connection fee under Iowa Code section 358.-22.[2]

I. We have no trouble finding that the trustees have clear authority, expressed in section 358.22, to assess construction costs against affected landowners. We need not consider other sections of the chapter which the trustees cite as authority for making the assessment. The critical issue in the case is on the trustees' corresponding duty to structure the fees in a manner which is reasonable, not arbitrary, and which is uniform and nondiscriminatory. This duty is mandated by Iowa Code section 358.20, which states in relevant part:

> Any sanitary district may by ordinance establish just and equitable rates or charges or rentals for the utilities and services furnished by it to be paid to such district by every person, firm or corporation whose premises are served by a connection to such utilities and services directly or indirectly. Such rates, charges, or rentals, as near as may be in the judgment of the board of trustees of the district, shall be equitable and in proportion to the services rendered and the cost thereof, and taking into consideration in the case of each such premises the quantity of sewage produced thereby and its concentration, strength and pollution qualities.

This corresponding duty of evenhanded fairness would of course attach as well to structuring fees under any other sections

---

**2.** In relevant part Iowa Code § 358.22 states:

**Special assessments.**

The board of trustees of a sanitary district *may provide for payment of all or any portion of the costs of acquiring, locating, laying out, constructing,* reconstructing, repairing, changing, enlarging, or extending conduits, ditches, channels, outlets, drains, *sewers,* laterals, treatment plants, pumping plants, and other necessary adjuncts thereto, *by assessing all, or any portion of the costs, on adjacent property according to the benefits derived.* For the purposes of this chapter, the board of trustees may define "adjacent property" as all that included within a designated benefited district or districts to be fixed by the board.... Special assessments pursuant to this section shall be in proportion to the special benefits conferred upon the property, and not in excess of the benefits....

.... 

... *a sanitary district organized under this chapter has all of the powers to specially assess the costs of improvements described in this section ....*

(Emphasis added.)

in chapter 358, which the trustees also cite as their authority for assessing connection fees.

This standard is the same as the one long used in making the same evaluation in challenges to fees assessed by municipal corporations. They are well known and not disputed by the parties.

■ Classification must be made on a reasonable basis for sewer charges. 11 McQuillen, *Municipal Corporations* § 31.-30.20, at 285 (3d ed. 1991). But differentiating between existing structures and subsequently built structures may be discriminatory. *See, e.g., Beauty Built Const. Corp. v. Warren*, 375 Mich. 229, 237, 134 N.W.2d 214, 219 (1965); *Lafferty v. Payson City*, 642 P.2d 376, 379 (Utah 1982) (city failed to show impact fee was reasonable when cost of new facilities was assessed disproportionately on newly developed properties).

We agree with the district court's conclusion that the differentiation here was not reasonable. We see no valid reason why longtime owners in the area should not share an equitable, rather than a nominal, cost in the construction of the new facility. The fact that they had invested large sums in constructing laterals, with varying and, it seems, little lasting success is not a reasonable basis for granting them special favor. To be sure, these longtime owners are required under the plan to connect with the new facility. In this their obligation to contribute to the general health of the area is precisely the same as the plaintiffs. That they spent large sums in the past in what has proven to be, or has become, an inadequate scheme for sewage disposal is no doubt regrettable. But it is not fair to recoup those past investments by way of disproportionate assessments against the plaintiffs. The trial court was correct in so holding.

II. The trial court was also correct in rejecting the trustee's posttrial attempt to limit the effect of its holding to these named plaintiffs. The challenged ordinance was, for the reasons we have explained, illegal and void.

AFFIRMED.

All Justices concur except LARSON, J., who takes no part.