1999 UT 7

The HOME BUILDERS ASSOCIATION OF UTAH, a Utah corporation, Plaintiff, Appellee, and Cross–Appellant,

v.

CITY OF AMERICAN FORK, a Utah municipality, Defendant, Appellant and Cross–Appellee.

No. 970232.

Supreme Court of Utah.

Jan. 26, 1999.

Darrel J. Bostwick, Jeffery R. Price, Peter W. Corroon, Salt Lake City, for plaintiff.

Jody K. Burnett, Kevin R. Bennett, Salt Lake City, for defendant.

STEWART, Justice:

¶ 1  This case is an appeal from a district court decision granting summary judgment in favor of plaintiff Home Builders Association of Utah. Home Builders brought suit in a declaratory judgment action against defendant American Fork City, asserting that American Fork had imposed unlawful fees for new real estate developments. At issue were fees for sewer and water hookups and for park acquisition and improvement. In its motion for summary judgment, Home Builders argued that *Banberry Development Corp. v. South Jordan City*, 631 P.2d 899 (Utah 1981), required municipalities to rely on specific factors in arriving at reasonable impact fees, and that the failure of the members of the American Fork City Council to expressly address those factors in approving the fee ordinance and resolutions rendered the fees void *ab initio*. The district court agreed and entered a summary judgment for Home Builders. American Fork appealed. Home Builders cross-appealed from an order denying a permanent injunction against temporary fee ordinances and an order allowing American Fork to retain monies collected under the ordinances the court had found invalid. We reverse and remand for further proceedings.

¶ 2  American Fork enacted Resolution 94–04–05R (April 12, 1994), establishing a sewer connection fee; Resolution 94–04–06R (April 12, 1994), establishing a water connection fee;[1] and Ordinance No. 92–05–22 (May 26, 1992), amending annexation fee provisions.[2] Home Builders filed a declaratory judgment action alleging that "[t]he effect of [these] Ordinances is to cast an unequal capital burden upon new home builders and developers, forcing them to pay a disproportionate share of the cost of public facilities such as sewers, roads, schools and water treatment plants."

¶ 3  Home Builders also asserted that the ordinances "imposed by the City grossly ignore the legal requirements established by the Utah Supreme Court." Those requirements are found in *Banberry*.[3] *Banberry* addressed the legality of impact fees imposed

---

1. Both of these provisions included a statement of purpose that read as follows: "The fee is allocated to the City [sewer/water] reserve fund for the purpose of financing capital improvements to the sewer system. The amount of fee above that required to cover costs is considered a system buy-in charge."

2. Home Builders also challenged Resolution 84–07–24R (July 10, 1984), establishing a fee schedule for review of development applications, and Resolution 11–11–80R (Nov. 11, 1980), establishing a fee for annexation requests. The district court determined that these fees were not impact fees subject to the criteria outlined in *Banberry* and therefore refused to grant summary judgment on these two claims. Home Builders later moved to dismiss these two claims so that the court's order on the other three ordinances would become final for purposes of appeal.

3. Although it does not affect the outcome of the specific dispute in this case, we note the passage of Title 11, Chapter 36, the "Impact Fees Act," effective June 19, 1995, which prescribes substantial and detailed legislative directives with respect to impact fees.

by municipalities to compensate for the burdens that new real estate developments place on existing municipal infrastructure by requiring extension of basic services to everexpanding communities. *Banberry* stated that "[w]ithout legal limits ... subdivision charges could easily be used to avoid statutory requirements for bonding municipal improvements, statutory limits on municipal taxation, and legal limits on restrictive or exclusionary zoning." 631 P.2d at 902. To prevent that, *Banberry* established limits on impact fees that can be charged for delivery of services to new developments.

¶ 4 *Banberry* held that the "presumption of constitutionality" applies to "a municipality's exercise of its legislative powers" in establishing impact fees. *Id.* at 904. Nevertheless, that presumption can be attacked:

> Since the information that must be used to assure that subdivision fees are within the standard of reasonableness is most accessible to the municipality, that body should disclose the basis of its calculations to whoever challenges the reasonableness of its subdivision or hookup fees. Once that is done, the burden of showing failure to comply with the constitutional standard of reasonableness in this matter is on the challengers

*Id.*

¶ 5 As a substantive matter, *Banberry* held that fees designed to contribute to the capital costs of extending municipal services to new subdivisions had to be equitable. *Banberry* stated that "to comply with the standard of reasonableness, a municipal fee related to services like water and sewer must not require newly developed properties to bear more than their equitable share of the capital costs in relation to benefits conferred." *Id.* at 903. *Banberry* listed a number of factors that should be considered in assessing the reasonableness of impact fees:

> Among the most important factors the municipality should consider in determining the relative burden already borne and yet to be borne by newly developed properties and other properties are the following ...:(1) the cost of existing capital facilities; (2) the manner of financing existing capital facilities (such as user charges, spe-

cial assessments, bonded indebtedness, general taxes, or federal grants); (3) the relative extent to which the newly developed properties and the other properties in the municipality have already contributed to the cost of existing capital facilities (by such means as user charges, special assessments, or payment from the proceeds of general taxes); (4) the relative extent to which the newly developed properties and the other properties in the municipality will contribute to the cost of existing capital facilities in the future; (5) the extent to which the newly developed properties are entitled to a credit because the municipality is requiring their developers or owners (by contractual arrangement or otherwise) to provide common facilities (inside or outside the proposed development) that have been provided by the municipality and financed through general taxation or other means (apart from user charges) in other parts of the municipality; (6) extraordinary costs, if any, in servicing the newly developed properties; and (7) the time-price differential inherent in fair comparisons of amounts paid at different times.

*Id.* at 903–04 (citations omitted).

¶ 6 *Banberry* stated that these factors were not exclusive and should not to be read as limiting the ability of municipalities to deal with differing circumstances. *See id.* Municipalities must be allowed "the flexibility necessary to deal realistically with questions not susceptible of exact measurement.... Similarly, municipal officials must also have the legal power to deal creatively with extraordinary or unforeseen circumstances in the provision of municipal services." *Id.* at 904 (citations omitted).

¶ 7 After Home Builders filed its complaint, it deposed the former mayor and various city council members who had voted on the fee ordinances. They were asked if they personally had considered the *Banberry* factors, and they responded that they had not. They also were unable to describe precisely how American Fork had arrived at the particular fees. They stated that they had primarily relied on numbers provided by city employees who were more directly responsible for overseeing the sewer, water, and an-

nexation regulations. The names of these employees were provided, but Home Builders did not depose them.

¶ 8 Home Builders moved for summary judgment on the ground that the city council had a duty to apply the seven *Banberry* factors in setting its fees for new real estate developments, and that the alleged failure of the council members to do so rendered American Fork's fees void from the outset. American Fork argued that Home Builders' motion was premature because Home Builders had not adduced sufficient information from discovery to demonstrate that American Fork's fees were unreasonable as a matter of law. The City asserted that Home Builders had failed to depose the American Fork employees who had actually calculated, or otherwise recommended, the fee schedules that were ultimately approved by the city council. The City also argued that Home Builders had not presented evidence demonstrating what fees would have been "reasonable" or to what degree American Fork's fees varied from that reasonable level.

¶ 9 The district court did not rule that the fees were unreasonable under *Banberry*. Rather, the court ruled that American Fork had failed to apply the *Banberry* factors and that therefore resolutions 94–04–05R and 94–04–06R and Ordinance No. 92–05–22 were void from the outset.

¶ 10 In response to the court's ruling, American Fork enacted emergency temporary ordinances to cover the fees in question: Ordinance No. 96–09–33, placing a moratorium on building permits unless applicants agreed to "voluntarily" pay the previously assessed fee; and Ordinance No. 96–09–34, titled "Emergency Impact Fee Ordinance," which imposed the fees at the same level as before.

¶ 11 Home Builders moved for a permanent injunction restraining the City from imposing any ordinances at variance from the court's earlier ruling and for return of the monies "illegally" collected. Contemporaneously, American Fork moved for a determination of the actual costs of services provided to new developments so that those amounts could be deducted from any monetary claims pursued by Home Builders. The district

court rejected both motions, ruling that American Fork had acted within its municipal powers in establishing the "temporary" emergency fee schedule, and also finding that Home Builders had not sought monetary damages but had merely requested a determination of the legality of the fee ordinances. Upon voluntary dismissal of the other pending claims raised in Home Builders' complaint, the court rendered a final judgment in the case.

¶ 12 Both parties appealed. American Fork renews its argument that Home Builders' motion was premature. Specifically, American Fork points to the undisputed fact that no competent evidence had been adduced that the fees imposed were unreasonable. Home Builders cross-appealed the district court's rejection of its motion for a permanent injunction and return of monies collected. Home Builders argues that by rejecting these motions, the court improperly allowed American Fork to circumvent the court's order voiding the prior ordinances. Because the outcome of Home Builders' cross-appeal is dependent upon the correctness of the district court's ruling that American Fork's fee ordinances were illegal as a matter of law, we first address American Fork's appeal.

¶ 13 The scope of review is clear. Because "summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law," *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997); Utah R. Civ. P. 56(c), it follows that issues presented on appeal are issues of law reviewed for correctness.

¶ 14 At bottom, the dispute in this case rests on the parties' differing interpretations of the procedural and substantive burdens imposed by *Banberry*. In *Banberry*, subdividers filed suit challenging the constitutionality of municipal fees imposed as a condition to connection to the municipal water system and as a condition to final approval of the subdivider's plat. We held that such fees are constitutionally permissible if the benefits derived from their exaction are "of 'demonstrable benefit' to the subdivision," and if newly

developed properties are not required to bear more than their equitable share of the capital costs in relation to the benefits conferred. *Id.* at 905 (quoting *Call v. City of West Jordan*, 614 P.2d 1257, 1259 (Utah 1980)). We held that fees must be reasonable, which is a higher standard than the requirement that they not be arbitrary or capricious. *See id.* The developers in *Banberry* contended that the water and park fees exceeded the city's costs and that the excess collected from the developers or subdividers would be used in the city's general operating fund and therefore constituted an illegal tax. In holding that fees that exceed the direct costs of the hook-ups could be charged, this Court relied on *Deerfield Estates, Inc. v. Township of East Brunswick*, 60 N.J. 115, 286 A.2d 498 (1972), to the effect that where a

> fee charged a new subdivision or a new property hook-up exceeds the direct costs incident thereto (as a means of sharing the costs of common facilities), the excess must survive measure against the standard that the total costs "fall equitably upon those who are similarly situated and in a just proportion to benefits conferred." Stated otherwise, to comply with the standard of reasonableness, a municipal fee related to services like water and sewer must not require newly developed properties to bear more than their equitable share of the capital costs in relation to benefits conferred.

*Banberry*, 631 P.2d at 903 (quoting *Deerfield Estates*, 286 A.2d at 505); *see also Lafferty v. Payson City*, 642 P.2d 376, 379 (Utah 1982). However, the standards governing allocation of improvement costs "should be sufficiently flexible to permit consideration to be given to the facts and circumstances of each particular case." *Deerfield Estates*, 286 A.2d at 505.

¶ 15   The term "equitable share" of capital costs which must be borne by newly developed properties was defined by "the relative burdens previously borne and yet to be borne by those properties in comparison with the other properties in the municipality as a whole; the fee in question should not exceed the amount sufficient to equalize the relative burdens of newly developed and oth-

er properties." *Banberry*, 631 P.2d at 903. The Court enumerated a number of noninclusive factors that a municipality should weigh in determining the relative burdens that had been borne and were yet to be borne by newly developed properties and other properties. *See id.* at 903–04. Given the inherent and unavoidable imprecision that accompanies the quantification of such costs and the apportionment of such costs, the Court made clear that municipalities must have sufficient flexibility to deal realistically with issues that do not admit of any kind of precise mathematical equality. Indeed, the Court stated that such equality " 'is neither feasible nor constitutionally vital.' " *Id.* at 904 (quoting *Airwick Indus. Inc. v. Carlstadt Sewerage Auth.*, 57 N.J. 107, 270 A.2d 18, 26 (1970)); *see also Lafferty*, 642 P.2d at 379. Necessarily, therefore, complete equality of treatment may be impossible, especially where equality of treatment must give way to altered circumstances such as a lack of a planned pattern of past extensions of the sewer or water system. *See Banberry*, 631 P.2d at 904.

¶ 16   In the instant case, Home Builders does not argue that the fees imposed by American Fork are outside constitutional parameters of reasonableness. Rather, the contention is that the ordinances are void because American Fork could not demonstrate that any of its council members were aware of or applied the relevant *Banberry* factors in enacting the ordinances at issue. Home Builder's contends that the city council had the affirmative duty of justifying the fees imposed on the basis of application of the *Banberry* factors and that city council members themselves must have at least considered those factors in enacting the ordinances. *Banberry* supports this position to some extent:

> [Because] information that must be used to assure that subdivision fees are within the standard of reasonableness is most accessible to the municipality, that body should disclose the basis of its calculations to whoever challenges the reasonableness of its subdivision or hook-up fees. Once that is done, the burden of showing failure to comply with the constitutional standard of

reasonableness in this matter is on the challengers.

*Id.* at 904; *see also Lafferty,* 642 P.2d at 379.

¶ 17 American Fork provided general information in response to an interrogatory that requested it to "[d]escribe precisely and in detail how each of the fee amounts set forth ... were arrived at, calculated, or otherwise determined by the City Council":

> Mayor Jess Green and City Administrator Carl Wanlass had met previously with one another and discussed various financial matters of concern relative to the City's sewer and water systems. During their discussions, they evaluated, *inter alia,* the effect of the new sales tax on construction materials purchased for municipal construction, inflation and the significantly-increased costs of construction, the analyses and recommendations of two engineering firms (Perkins–Thurgood and Horrocks) in past and ongoing master plan studies ... relating to the City's sewer and water systems and their capacity to meet the expected growth in population base served, on-going master plan studies relating to possible water drainage and pressurized irrigation systems, the City's capital improvement needs, the projected connection fee revenue from the Horrocks study, a comparison with the charges of other municipalities in the area, desired "level of service" ..., and what might be regarded as a fair and not-too-burdensome surcharge to those helping to create the need for further expansion of the City's sewer and water-related systems to assist in such expansion and/or improvements—a charge that would cover only a part of the anticipated expense of such expansion and/or improvements. Input was also received from City Planner Rod Despain. Although mathematical formulae were not employed in such calculations, the resulting recommended fees were believed to be fair and reasonable, and well within the range of charges assessed by other communities in the State for similar services.

■■■ ¶ 18 The fact that "no mathematical formulae" were employed in calculating the fees is not dispositive. The law does not make reasonableness turn on a formula, given the variety of factual circumstances in each case and the necessary elasticity of such words as "reasonable" and "equitable." No mathematical formula can be stated that would allow for the necessarily discretionary judgment. American Fork's obligation under *Banberry* is to provide reasonable estimates of the cost of existing facilities and projections of future capital costs and to describe other factors relevant in establishing equitable impact fees. *See Lafferty,* 642 P.2d at 379.

¶ 19 The trial court presumed that the seven factors suggested in *Banberry* constitute a mandatory test of some sort for the creation of a valid fee. Presented with evidence that the American Fork City Council members had not considered the *Banberry* factors when voting on the fees, the court concluded that this default rendered those fees void from the outset.

■■■ ¶ 20 This approach misapplies *Banberry.* The seven factors outlined in that opinion are an illustrative list of factors that municipalities should consider in complying with the duty to limit impact fees to "their equitable share of the capital costs in relation to benefits conferred." *Banberry,* 631 P.2d at 903. The "equitable share" standard is the ultimate legal standard that municipalities are obligated to meet. Consideration of the *Banberry* factors is a means to that end, but is not the end itself. In the context of any particular case, those factors may be due greater or lesser weight. Thus their applicability, like the ultimate standard "equitable share," are highly fact dependent. In such circumstances, summary judgment is rarely appropriate. *Cf. Bowen v. Riverton City,* 656 P.2d 434, 436 (Utah 1982).

■■■ ¶ 21 We emphasize that this case is in a preliminary phase and the presumption of constitutionality still attaches. *See Call,* 614 P.2d at 1258. In addition, "reasonableness" determinations are generally better adjudicated after a trial. American Fork's basis for the fees, as stated in its answers to interrogatories, is sufficient to withstand summary judgment. That is, it cannot be said that Home Builders is entitled to judg-

ment as a matter of law given American Fork's answers to interrogatories, notwithstanding the rather vague generalities that American Fork asserts therein. That does not mean that American Fork is entitled to prevail after a trial on the merits.

¶ 22 Furthermore, we reject Home Builders' contention that the members of the American Fork City Council must themselves personally and in detail attend to the basic fact gathering and analysis currently conducted by the Council's staff. Clearly it is usual and appropriate for staff personnel to perform such tasks. *Cf. Texas Nat'l Theatres, Inc. v. Albuquerque,* 97 N.M. 282, 639 P.2d 569 (1982); *Siesta Hills Neighborhood Ass'n v. Albuquerque,* 124 N.M. 670, 954 P.2d 102 (Ct.App.1998).

¶ 23 Home Builders' cross-appeal of the temporary emergency fee provisions is premised on the correctness of the district court's erroneous ruling on the impact fees. Because that premise is not correct, Home Builders' cross-appeal is not ripe for adjudication at this time. We therefore reverse and remand for further proceedings consistent with this opinion.

¶ 24 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Justice STEWART'S opinion.

