1999 UT 63

The **HOME BUILDERS ASSOCIATION, of the State of Utah, a Utah corporation, Plaintiff and Appellant,**

v.

**CITY OF NORTH LOGAN, a Utah municipality, Defendant and Appellee.**

No. 980058.

Supreme Court of Utah.

June 22, 1999.

**562**

Darrel J. Bostwick, Jeffery R. Price, Peter M. Corroon, Salt Lake City, for plaintiff.

Jody K. Burnett, Salt Lake City, and Bruce L. Jorgensen, Logan, for defendant.

RUSSON, Justice:

¶ 1    Plaintiff Home Builders Association of the State of Utah appeals a decision of the district court granting summary judgment to the City of North Logan.   Home Builders filed suit, alleging that fees North Logan charged on new housing developments were illegal.   North Logan moved for summary judgment.   The City argued that its fees

were reasonable and equitable as a matter of law.   The district court agreed, granted North Logan's motion, and dismissed the case.   We affirm.

## BACKGROUND

¶ 2    Home Builders initiated its suit in October of 1994 as a declaratory judgment action.   Home Builders challenged fees established by four North Logan ordinances:   a water connection fee, a sewer connection fee, a road impact fee, and a park impact fee. Home Builders argued that these fees violated the principles outlined in *Banberry Development Corp. v. South Jordan City*, 631 P.2d 899, 903–04 (Utah 1981).[1]   *Banberry* established principles governing the legality of impact fees and also provided an illustrative list of factors for determining the reasonableness of fees.   *See id.*

¶ 3    After substantial discovery had been conducted,[2] North Logan asserted that its fees were reasonable as a matter of law and moved for summary judgment.   The City presented evidence that its fees were calculated to compensate for the costs of extending services and to equitably distribute the burden of maintaining and improving existing capital facilities.   The City contended that its fees did not exceed equitable limits and that it had even reduced some of the fees well below those limits.

¶ 4    In responding to North Logan's motion, Home Builders offered no affirmative evidence tending to negate the City's cost calculations.   Instead, Home Builders criticized the underlying decision-making process the City employed to arrive at its fees.   That decision-making process generally consisted of delegating to individual city council members, city employees, or retained firms the responsibility for calculating the financial costs of extending services to new developments.   Those individuals relied on some, but not necessarily all, of the factors cited by

---

1.   Although *Banberry* governed the legality of impact fees at the time the disputed fees were instituted and this case was filed in the district court, we note the subsequent legislative enactment of the Impact Fees Act, codified at Utah Code Ann., title 11, chapter 36.   It became effective June 19, 1995.

2.   Home Builders claims that under *Banberry* the information upon which North Logan based its fee rates was inadequate.   Home Builders, however, has not alleged or demonstrated that any relevant information was withheld or concealed.

*Banberry.* Their calculations also took into consideration factors that were peculiar to the fee at issue and unique circumstances pertaining to North Logan's service obligations. Home Builders asserted that this process was flawed and argued that *Banberry* required each city council member to personally review *Banberry* and apply each of its factors before voting to approve any of the fees.

¶ 5 The district court disagreed with Home Builders' interpretation of *Banberry*. It held that North Logan was not required to "consider each of the [*Banberry*] criteria, but rather the City's calculation of the fees charged [is] to be gauged against the [*Banberry*] criteria in order to establish reasonableness." The court concluded that the City had shown compliance with *Banberry*'s standard and that Home Builders had failed to meet its burden in opposing summary judgment. In this regard, the court noted that Home Builders could not

> simply allege that the fees charged are unreasonable and that the City failed to comply with *Banberry* without showing what reasonable fees would be if [the City complied] with *Banberry*. The information supplied by [the City] demonstrates compliance with the *Banberry* criteria had those criteria been considered.... [Home Builders] must demonstrate that the fees are unreasonable, that burden lies upon [Home Builders] and it has failed to raise an issue of material fact related thereto.

The district court accordingly granted summary judgment in favor of North Logan, and Home Builders appealed.

### DISCUSSION

¶ 6 "Because 'summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law,' ... it follows that issues presented on appeal are issues of law reviewed for correctness." *Home Builders Ass'n v. City of American Fork,* 973 P.2d 425, 428 (Utah 1999) (quoting *Stephens v. Bonneville Travel, Inc.,* 935 P.2d

518, 519 (Utah 1997)). According to rule 56(e) of the Utah Rules of Civil Procedure:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also Badger v. Brooklyn Canal Co.,* 922 P.2d 745, 752 (Utah 1996).

### I. CASES GOVERNING THE LEGALITY OF IMPACT FEES

¶ 7 Both parties rely on *Banberry* to support their arguments on appeal. After the conclusion of briefing in this case but shortly before oral argument, we handed down a decision in *Home Builders Ass'n v. City of American Fork,* 973 P.2d 425, 430–31 (Utah 1999). *Banberry,* as illuminated by *American Fork,* provides the governing law for this case. *American Fork* involved the same plaintiff, Home Builders, in the same type of proceeding, litigating a declaratory action for relief from allegedly illegal impact fees.[3] In *American Fork,* Home Builders offered arguments based on *Banberry* that are virtually identical to its arguments in the instant case. Because *American Fork* addressed and rejected many of the same arguments Home Builders now presents, we review *Banberry* and *American Fork* only insofar as they pertain to the unique issues in this appeal.

¶ 8 *Banberry* established procedural and substantive guidelines for cases where impact fees are challenged. As a procedural matter, *Banberry* allocated burdens of proof between municipalities and challengers of fees. The municipality must first "disclose the basis of its calculations to [whoever] challenges the reasonableness of its subdivision or hookup fees." 631 P.2d at 904. The burden then falls upon the challenger to

---

**3.** The posture of Home Builders on appeal in this case, however, differs from its posture in *American Fork.* In *American Fork,* Home Builders

(rather than the municipality) brought the successful summary judgment motion in the district court.

"show[ ] failure to comply with the constitutional standard of reasonableness." *Id.*

¶ 9 Substantively, *Banberry* began its analysis by acknowledging that a presumption of constitutionality attaches to the legislative decisions of municipalities when they establish impact fees. *See* 631 P.2d at 904. That presumption, however, may be overcome if fees "require newly developed properties to bear more than their equitable share of the capital costs in relation to benefits conferred." *Id.* at 903. Thus,

> where the fee charged a new subdivision or a new property hookup exceeds the direct costs incident thereto (as a means of sharing the costs of common facilities), the excess must survive measure against the standard that the total costs "fall equitably upon those who are similarly situated and in just proportion to benefits conferred." Stated otherwise, to comply with the standard of reasonableness, a municipal fee related to services like water and sewer must not require newly developed properties to bear more than their equitable share of the capital costs in relation to benefits conferred.

*Id.*

¶ 10 *Banberry* also established a list of factors for determining the reasonableness of impact fees. *Id.* at 903–04. This list was couched in illustrative terms and was designed to guarantee that fees were reasonable and equitable and not in violation of other statutory limits.

> Among the most important factors the municipality should consider in determining the relative burden already borne and yet to be borne by newly developed properties and other properties are the following, suggested by the well-reasoned authorities cited below: (1) the cost of existing capital facilities; (2) the manner of financing existing capital facilities (such as user charges, special assessments, bonded indebtedness, general taxes, or federal grants); (3) the relative extent to which the newly developed properties and the other properties in the municipality have already contributed to the cost of existing capital facilities (by such means as user charges, special

> assessments, or payment from the proceeds of general taxes); (4) the relative extent to which the newly developed properties and the other properties in the municipality will contribute to the cost of existing capital facilities in the future; (5) the extent to which the newly developed properties are entitled to a credit because the municipality is requiring their developers or owners (by contractual arrangement or otherwise) to provide common facilities (inside or outside the proposed development) that have been provided by the municipality and financed through general taxation or other means (apart from user charges) in other parts of the municipality; (6) extraordinary costs, if any, in servicing the newly developed properties; and (7) the time-price differential inherent in fair comparisons of amounts paid at different times.

*Id.*

¶ 11 As we noted in *American Fork*, these factors cannot be applied in a rigid and formalistic fashion:

> Given the inherent and unavoidable imprecision that accompanies the quantification of such costs and the apportionment of such costs, the Court made clear that municipalities must have sufficient flexibility to deal realistically with issues that do not admit of any kind of precise mathematical equality. Indeed, the Court stated that such equality "is neither feasible nor constitutionally vital."

*American Fork*, 973 P.2d at 427 (quoting *Banberry*, 631 P.2d at 904) (citation and further quotation omitted).

¶ 12 Given our holding in *American Fork*, the district court in this case was correct in ruling that *Banberry* established a standard of reasonableness against which impact fees were to be measured, but did not require a rigid, formalistic approach to the decision-making process employed to calculate the fees. Moreover, the district court was correct in holding that city council members were entitled to rely upon the expertise of others in formulating the fees.

¶ 13 Consequently, once North Logan had "disclose[d] the basis for its calculations"

and properly presented that evidence in support of its motion for summary judgment, the burden fell on Home Builders, under Utah Rule of Civil Procedure 56(e) and *Banberry,* to demonstrate a disputed issue of material fact respecting the reasonableness of the City's fees. In its brief on appeal, Home Builders contests the means by which the City arrived at its fee calculations, but Home Builders fails to articulate why North Logan's fees are unreasonable or how proper application of *Banberry* would have resulted in a different fee.

## II. THE FOUR DISPUTED FEES

■ ¶ 14 Home Builders challenges four development fees: (1) a water connection fee, (2) a sewer connection fee, (3) a road impact fee, and (4) a park impact fee. With respect to the water connection fee and the sewer connection fee, Home Builders cites no evidence in the body of its brief showing that either fee was in fact unreasonable.[4] Home Builders does not articulate which *Banberry* factors were ignored; nor does it explain how the reasonableness of either fee was affected by the failure to treat any particular factor. North Logan, on the other hand, has demonstrated that it carefully considered numerous factors designed to balance capital costs between existing users and new developments. In fact, the evidence North Logan introduced indicated that its calculations for assessing the costs of new development would have justified higher fees than those charged. The record reveals that Home Builders did not rebut this assertion, nor did it articulate an alternative basis for calculating the fees.

■ ¶ 15 With respect to the park impact fee, the record discloses that the fee was based on explicit consideration of the *Banberry* factors. Home Builders fails to identify which, if any, *Banberry* factors were ignored, and fails to explain how the reasonableness of the park impact fee was affected by the failure to treat any particular factor.

■ ¶ 16 Home Builders nevertheless argues that there are disputed issues of materi-

al fact concerning the park impact fee. First, Home Builders maintains that North Logan should have used a different valuation method for determining the initial residential unit service level upon which the fee level was based. However, Home Builders simply presents this contention as a bald assertion, without articulating why the City's valuation method is unreasonable according to the criteria set forth by *Banberry.* Given *Banberry's* presumption that municipal decisions are valid, Home Builders has not met its burden of showing that the City's park facilities valuation method is unreasonable.

■ ¶ 17 Home Builders also asserts that North Logan's decision to impose the park fee upon new residential development but not on new commercial development was an inequitable distribution of costs. In assessing the park impact fee, the City presumed that residential growth placed the primary burden upon park facilities and did not assess similar impact fees on commercial establishments. The district court found nothing in *Banberry* forbidding this type of distinction—so long as there was a reasonable basis for presuming that one type of development created burdens that another did not. We agree. Moreover, in the face of the City's evidence that it substantially discounted the park fee below the existing per unit service level, Home Builders offered no evidence of the degree to which the commercial exemption (even assuming the exemption was improper) would offset the discount. Home Builders thus failed to offer any affirmative evidence that the fee charged was actually an unreasonable and inequitable burden upon new residential development.

■ ¶ 18 Home Builders' final contention concerning the park impact fee is that North Logan employed a master plan designed to increase the overall acreage of municipal park facilities in a manner that unfairly required new developments to pay for improvements that would primarily benefit existing residents. With respect to this particular concern, *Banberry* treated park impact fees

---

4. The only allegation of inequity is a claim that North Logan allowed discounted payments in 1980 for persons who paid the fee well before the deadline. This was apparently a one-time discount to encourage early payment and assist the City in raising funds needed for a loan to con-

struct the sewer system. The discount was granted some fourteen years before Home Builders filed suit, and Home Builders has not shown how its untimely challenge is relevant to the issues it now raises.

as a distinct category from water or sewer connection fees because "[t]he central facilities that support water and sewer service[s] would generally confer the same benefits in every part of the municipality, but the benefits conferred by recreational, flood control, or other dispersed resources may be measurably different in different parts of the municipality." 631 P.2d at 905. Nevertheless, Home Builders points to no evidence that indicates how existing residents would be unfairly benefitted at the cost of new development.[5] Although there is some dispute over the precise mechanism that would be employed to fairly distribute costs of the increased service level between existing residents and new development, Home Builders did not demonstrate what *Banberry* substantively required or how those requirements would vary from the fee actually imposed by North Logan.

¶ 19 Finally, we turn to Home Builders' challenge of the road impact fee. In determining the amount of the road impact fee, North Logan commissioned a study by an independent agency, Rosenthal and Associates. That agency concluded that North Logan had a road capacity surplus, meaning that planned improvements to roads were needed only to service new development. If this conclusion was correct, *Banberry*'s requirements could not even come into play because *Banberry* was only concerned with fees allocated to the improvement of existing capital facilities in excess of "the direct costs" occasioned by new development. 631 P.2d at 903. Rosenthal recommended an impact fee of $1446 per residential unit. This fee would be entirely devoted to new road construction. No part of the fee was to be allocated to improvement of existing roads. Nonetheless, the City imposed a fee of only $1000, so as not to unduly burden

or discourage new developments. In effect, new development would bear only seventy percent of its "equitable share of the capital costs in relation to benefits conferred." *Id.* Home Builders offered no evidence that a reasonable fee would have been less than the Rosenthal recommendation, let alone evidence showing that the lower impact fee actually charged was unreasonable.[6]

## CONCLUSION

¶ 20 Home Builders thus failed to meet its burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e). The district court correctly granted summary judgment. We affirm.

¶ 21 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

---

5. North Logan asserts that current residents substantially support the costs of increasing the park service level through general tax contributions. Although this claim does not clearly explain how costs for the target service level are distributed between existing residences and new development, it is important to note that the actual park fee on new development is substantially lower than the calculated cost per living unit of the existing service level. This suggests that existing residents are more likely subsidizing the expansion of park services for new development in-

stead of forcing new development to bear an unfair share of the cost to improve existing facilities.

6. Home Builders notes that commercial properties do not pay the road fee. Although there does not appear to be any particular justification for this exemption beyond a desire to avoid deterring businesses from locating in North Logan, Home Builders does not show how it was harmed by the asserted discrimination.