2011 UT 04

**TOOELE ASSOCIATES LIMITED PARTNERSHIP, Plaintiff, Appellee, and Cross-appellant,**

v.

**TOOELE CITY CORPORATION, Defendant, Appellant, and Cross-appellee.**

No. 20090028.

Supreme Court of Utah.

Jan. 11, 2011.

Paxton R. Guymon, Joel T. Zenger, Salt Lake City, for appellee.

W. Cullen Battle, Nora K. Brunelle, Salt Lake City, Roger E. Baker, Tooele, for appellant.

PARRISH, Justice.

## INTRODUCTION

¶ 1 This case requires us to analyze the constitutionality of a municipal inspection fee. Specifically, we must determine whether the district court erred in holding that Tooele City Corporation's civil inspection fee is an unconstitutional tax under Utah Constitution article I, section 5, because the City's procedures for setting its inspection fee were unreasonable. Because the district court's constitutional analysis incorrectly focused on the City's fee-setting procedure rather than the cost of conducting the civil inspections, we hold that the district court erred and reverse its decision.

## FACTUAL BACKGROUND

¶ 2 Prior to 1996, Tooele City was an economically dormant town with little develop-ment. The City performed very few civil inspections[1] and had not implemented a civil inspection fee to recover its inspection costs. Any civil inspections that were performed were conducted by the City's office staff, and the cost of these inspections came out of the City's general fund.

¶ 3 In 1996, the City experienced a dramatic increase in new development. Along with this growth came an increased demand for civil inspections. To facilitate the growing demand, the City considered adopting a civil inspection fee to cover its rising inspection costs. The City had no past historical data to forecast its civil inspection costs. To determine what to charge for its civil inspection fee, the City assigned its chief building official, Reid Gerritsen, to survey the inspection fees charged by neighboring cities and to research what the City had previously paid to outside engineering firms. Gerritsen conducted such a survey but did not inquire into the methods that other municipalities used to measure their expenses or the actual costs they incurred in performing inspections. Nor did Gerritsen attempt to ascertain the City's actual cost of performing inspections. Based on the results of his survey, Gerritsen proposed an inspection fee of 4 percent of the total bonded cost of civil improvements subject to the civil inspection. On September 18, 1996, the Tooele City Council passed a resolution adopting the 4 percent inspection fee.

¶ 4 Tooele Associates Limited Partnership ("Associates") owns land in Tooele City upon which it intends to build a planned community. Associates' master plan includes approximately 7,500 to 8,000 residential units, a golf course, and commercial property. The total bonded cost of the civil improvements on phase 1–E of Associates' planned community was estimated at $2,362,705.90. The City charged Associates a civil inspection fee of $94,508.24 for phase 1–E, which is 4 percent of the bonded cost of the civil improvements.

---

1. Civil inspections are inspections of public improvements. These improvements include basic infrastructure elements that are constructed by developers and then dedicated to the city for public use. The public improvements inspected generally include water lines, sewer lines, storm drains, roads, curbs and gutters, sidewalks, park strip landings, street and traffic signs, and street lighting.

¶ 5 Associates protested the amount of the civil inspection fee and requested that a study be undertaken to determine the City's actual costs to perform the civil inspections on phase 1–E. In response to Associates' protest, the City's public works director conducted an internal audit of the City's inspection fees and concluded that the City's actual inspection costs equated to 3.9 percent of the bonded costs of civil improvements subject to civil inspection. The City sent a copy of its internal audit to Associates.

¶ 6 Unsatisfied with the City's internal audit, Associates filed suit on November 7, 2003. Associates' complaint set forth seven causes of action: (1) a claim for return of any funds it paid in excess of the City's actual inspection costs, (2) a claim of unjust enrichment, (3) a claim for an accounting of the City's civil inspection costs and revenues associated with phase 1–E of Associates' development, (4) a claim that the civil inspection fee is an unconstitutional tax as applied to phase 1–E of Associates' development, (5) a declaratory judgment that the fee is an unconstitutional tax, (6) a claim that the fee violates the uniform operation of laws clause of the Utah Constitution, and (7) a request for attorney fees.

¶ 7 The district court held a trial on the issues. At trial, the City presented expert testimony regarding its civil inspection costs. The City's expert was Gill Miller, a certified public accountant employed by the accounting firm PricewaterhouseCoopers. Miller performed a review of all of the costs and revenues associated with the City's inspections. In conducting his analysis, Miller chose a five-year review period from July 1, 1998 to June 30, 2003. Miller chose July 1, 1998 as his starting point because prior to this time the City had used a different accounting system, which made the information noncomparable. Miller also reasoned that because the revenues from the City's inspection fees were received up front while the costs associated with these fees were incurred over several years, using a larger historical data set, such as five years, would be a more accurate method to match the City's costs with its revenues. Miller calculated that for the relevant five-year period,

the City's inspection costs exceeded revenues by $428,381. Additionally, Miller presented evidence that for every year reviewed, except for 1999, the City's inspection costs exceeded its revenues.

¶ 8 Because the City did not isolate inspection costs and revenues, it was difficult for Miller to locate the pertinent information for his review. To locate the actual revenues and costs associated with the City's inspection fee, Miller examined the prior internal audit, the general ledger, and information from the county recorder's office. Miller did not merely sample the data to estimate costs and revenues. Rather, he looked at all of the data to calculate the City's actual inspection costs and revenues.

¶ 9 Associates also presented expert testimony regarding the City's inspection costs. Associates' expert, Christine Richman, is a planning consultant. She compared the City's inspection costs and revenues for 1999 and 2000. Based on her calculations, she concluded that the City's inspection revenues exceeded its inspection costs. But the district court found Richman's report unreliable because it incorrectly assumed that between 65 percent and 75 percent of the City's civil inspections involved the City's own projects when, in reality, the City's projects rarely require civil inspection. Additionally, the district court found that her comparison of material price change over time was unreliable because it was not from a consistent supplier.

¶ 10 After trial, but before the district court issued its decision, the City filed an Application for Award of Expert Witness Costs. In its motion, the City requested that Associates pay $16,618 in costs associated with the preparation of its expert rebuttal report. Associates had, earlier in the proceeding, agreed to pay the City's expert rebuttal costs in exchange for being allowed to file a late expert report. But Associates' agreement to pay the costs contemplated that the rebuttal costs be "court approved."

¶ 11 The court issued its Memorandum Decision on April 29, 2008. In its decision, the district court found that the City had not completed its inspections on phase 1–E of Associates' development. It therefore con-

cluded that it could not determine the City's final cost of inspecting phase 1–E, a fact that was fatal to Associates' first four claims. It therefore dismissed these claims.

¶ 12 As to Associates' claim for a declaratory judgment that the City's fee was unconstitutional, the district court found that the City's purpose for enacting its inspection fee was to recover the costs of its civil inspections, and the district court concluded this purpose was proper. But it held that because the City did not attempt to ascertain its civil inspection costs before implementing its fee, the fee was unconstitutional.

¶ 13 Additionally, the district court took issue with Miller's use of a five-year period to match the City's inspection costs with its revenues. Specifically, it found that a multi-period review, such as the one conducted by Miller, could be easily manipulated by changing the period of examination. It noted that had Miller analyzed the data from 1999, the City's revenues exceed its costs by $220,320, and had it analyzed the period from 1999 to 2000, a surplus of $177,197 would be reported.

¶ 14 The district court dismissed Associates' uniform operation of laws claim because Associates failed to show any discrimination on the part of the City. Additionally, it denied Associates' request for attorney fees. And, in a separate decision, the trial court approved the City's request for reimbursement of its expert-witness expenses.

¶ 15 The City appeals the district court's declaratory judgment that its inspection fee is illegal. Associates cross-appeals the district court's holding denying its request for attorney fees and awarding the City its costs incurred in preparing its expert-witness report. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp.2010).

## STANDARD OF REVIEW

¶ 16 A district court's ruling regarding the constitutionality of a regulatory fee is a mixed question of law and fact. It is therefore reviewed under a clearly erroneous standard for questions of fact and a correctness standard for questions of law. *D.D.A. v. State (State ex rel. D.A.)*, 2009 UT 83, ¶ 13,

222 P.3d 1172. However, the district court's application of the law to the facts is given some discretion. *Id.*

## ANALYSIS

¶ 17 The City asks us to determine whether the district court erred when it concluded that the City's civil inspection fee was unconstitutional. On cross-appeal, Associates asks us to consider three issues: (1) whether the district court erred in holding that Associates was not entitled to a refund of all or a portion of the amount it paid for the City's civil inspection fee, (2) whether the district court erred in rejecting Associates' claim for attorney fees, and (3) whether the district court erred in approving an excessive amount of costs associated with the City's expert. Because we conclude that the district court misapplied the test for determining whether the City's civil inspection fee was constitutional, we need not and do not address Associates' contentions that it is entitled to attorney fees and a refund of the inspection fees it paid to the City.

## I. THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE CITY'S CIVIL INSPECTION FEE WAS UNCONSTITUTIONAL

¶ 18 The City contends that the district court's determination that its civil inspection fee was unconstitutional was in error in three respects. First, it argues that the district court misapplied the substantive test for analyzing the constitutionality of the City's inspection fee. Second, it argues that the district court erred when it rejected Miller's five-year cost/revenue analysis. Finally, it argues that the district court erred when it determined that Associates met its procedural burden. We address the City's arguments in turn.

### A. The District Court Misapplied the Constitutional Test for Analyzing the City's Inspection Fee

¶ 19 We first discuss the City's contention that the district court misapplied the substantive test for determining whether its fee was constitutional. The City argues that the

district court erred when it relied on the City's fee-setting procedures as its sole basis for finding the City's inspection fee unconstitutional. It argues that the correct test is whether the amount of the fee bears a reasonable relationship to the cost of regulating the industry and not whether the procedure for enacting the fee is reasonable. We agree with the City.

¶ 20 In determining whether a municipal fee is constitutional, the threshold question is whether the charge is a fee or a tax. *See V–1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 911 (Utah 1996), *rev'd on other grounds on rehearing*, 942 P.2d 906 (1997).

> [A] tax raises revenue for general governmental purposes, while a fee raises revenue either to compensate the government for the provision of a specific service or benefit to the one paying the fee or to defray the government's costs of regulating and policing a business or activity engaged in by the one paying the fee. . . .
>
> . . . [T]here are at least two broad types of fees: (i) a fee for service, i.e., a specific charge in return for a specific benefit to the one paying the fee, and (ii) a regulatory fee, i.e., a specific charge which defrays the government's cost of regulating and monitoring the class of entities paying the fee.

*Id.* Because both parties concede that the City's inspection charge is a regulatory fee, we analyze it under our constitutional test for regulatory fees.

¶ 21 To determine whether a regulatory fee is constitutional, we have established both procedural and substantive guidelines. *Home Builders Ass'n v. City of N. Logan*, 1999 UT 63, ¶ 8, 983 P.2d 561. Our procedural guidelines allocate "burdens of proof between municipalities and challengers of fees." *Id.* Under these guidelines, a "municipality must first 'disclose the basis of its calculations to [whoever] challenges the reasonableness of'" the fee. *Id.* (alteration in original) (quoting *Banberry Dev. Corp. v. S. Jordan City*, 631 P.2d 899, 904 (Utah 1981)). "'The burden then falls upon the challenger to 'show[ ] failure to comply with the constitutional standard of reasonableness.'" *Id.* (alteration in original) (quoting *Banberry*, 631 P.2d at 904).

¶ 22 The substantive test for determining whether a regulatory fee is reasonable recognizes that a presumption of constitutionality attaches to a municipality's decision to enact a regulatory fee.[2] *Id.* ¶ 9. This presumption can be overcome if the challenger shows that the fee is unreasonable. *See V–1 Oil Co.*, 942 P.2d at 912. To show that a regulatory fee is unreasonable, *it is not enough for a challenger to contest the procedure* by which the city arrived at its fee calculations. *See City of N. Logan*, 1999 UT 63, ¶ 13, 983 P.2d 561. Rather, the challenger must establish that the fee is unreasonable by demonstrating that the fee does not bear a reasonable relationship to the *cost* of regulating the industry. *See id.; V–1 Oil Co.*, 942 P.2d at 912; *see also Salt Lake City v. Bennion Gas & Oil Co.*, 80 Utah 530, 15 P.2d 648, 650 (1932) (holding the "amount of the inspection fee is not a judicial question; it rests with the Legislature to fix the amount, and it can only pres-

---

**2.** The City also argues in the alternative that the district court applied the wrong standard of review in analyzing the constitutionality of the City's fee-setting procedure. The City contends that a challenger can rebut the presumption of constitutionality afforded to a municipal fee by challenging either the City's fee-setting procedure or the City's actual fee and that these challenges raise separate questions that are subject to different legal standards. To support its position, the City relies on *Walker v. Brigham City*, 856 P.2d 347 (Utah 1993). In *Walker*, we applied an "arbitrary, capricious, or illegal" standard of review to analyze a municipality's fee-setting procedure but applied a reasonableness test to determine whether the actual fee was invalid. *Id.* at 349. But the City's reliance on *Walker* is misplaced. *Walker* involved a statutory challenge to a municipal fee, not a constitutional challenge. *Id.* at 348. Indeed, we have specifically rejected constitutional challenges to municipal fees that are premised on a municipality's fee-setting procedure. *See City of N. Logan*, 1999 UT 63, ¶ 13, 983 P.2d 561 (holding that to establish that a municipal fee is unconstitutional, it is not enough to merely contest the procedure by which the City arrived at its fee calculations because plaintiff must also articulate why the municipal fee is unreasonable and how application of a different procedural approach would have resulted in a different fee).

ent a valid objection when" the fee is "so unreasonable and disproportionate to the services rendered as to attack the good faith of the law" (internal quotation marks omitted)).[3]

¶ 23 In *Home Builders Ass'n of Utah v. City of American Fork*, we addressed a similar question of whether a municipality's failure to use any formula to establish its impact fees would necessarily result in the conclusion that the fees were unreasonable. 1999 UT 7, ¶¶ 18–20, 973 P.2d 425. In *City of American Fork*, the City of American Fork had failed to consider the *Banberry* factors, a list of seven factors that we established as being relevant to establishing impact fees. *Id.* ¶ 20; *Banberry*, 631 P.2d at 903–04. We concluded that the city's failure to use a mathematical formula to calculate its impact fee was not dispositive of the issue of reasonableness. *Id.* ¶ 18. We explained that fee setting procedures, such as the *Banberry* factors, were merely "means to [an] end." *Id.* ¶ 20. And the ultimate legal test is whether the impact fees relate to the cost of the benefits conferred on those paying the fees. *Id.* ¶¶ 14, 20.

■ ¶ 24 As was the case in *City of American Fork*, the fact that the City did not employ any mathematical formula in setting its inspection fee is not dispositive. The ultimate legal test in determining whether a regulatory fee is constitutional is whether the fee relates to the cost of regulating the industry, not whether the fee-setting procedure was reasonable.

¶ 25 In this case, the district court found that the City's inspection expenses exceeded its fee revenues from the period of July 1, 1998, to June 30, 2003. But it nevertheless held that the City's inspection fee was unconstitutional because it concluded that the City's fee-setting procedure was unreasonable. Specifically, the district court took issue with the fact that the City did not as-

certain its actual inspection costs before implementing its inspection fee. It concluded that the City's method of setting its fee based on a survey of what neighboring municipalities charged was an unreasonable and "[un]scientific approach" to setting its fee. By focusing on the City's fee setting procedure, rather than the reasonableness of the fee itself, the district court erred.

**B. The District Court Erred in Rejecting The City's Multiyear Analysis**

¶ 26 We now address whether the district court erred in rejecting the City's five-year cost/revenue analysis in determining the reasonableness of the fee. While the district court found that the City's inspection costs exceeded its inspection revenues from July 1, 1998, to June 30, 2003, it concluded that the City's use of a five-year period to analyze the reasonableness of its inspection fees was prone to manipulation and therefore inappropriate. Associates urges us to adopt district court's rationale. Additionally, it argues that the district court is correct for the alternative reason that use of a five-year period violates the Uniform Fiscal Procedures Act for Utah Cities (the "Act"). *See* Utah Code Ann. §§ 10–6–101 to –159 (Supp. 2010). We disagree on both counts.

■ ¶ 27 We first address Associates' contention that the City's five-year analysis is contrary to the Act. Associates argues that the City was required by the Act to provide an annual budget for its civil inspection program in which the City was required to estimate the "total . . . anticipated revenues" from its inspection fee. It further argues that these revenues were required to "equal the total of appropriated" costs associated with the civil inspections. *See id.* § 10–6–110(2). Associates' contentions are misplaced.

3. The City also asks us to determine whether the reasonableness of the inspection fee is determined by the individual cost of the Associates' inspection project. As we have stated before, the reasonableness of an inspection fee is determined by the cost of regulating the *entire* industry. *See V–1 Oil Co.*, 942 P.2d at 912. We note, however, there may be some instances where an individu-

al's inspection costs are so disproportionate to the fees paid that it offends the constitutional limit of reasonableness. But we do not have such evidence before us here. At the time of trial, the City had not completed the inspections associated with phase 1–E of Associates' development. We therefore cannot, and do not, address this issue.

¶ 28 Whether the City is in violation of the Act has no bearing on whether the City's inspection fee is constitutional. Nor does it have any bearing on whether a multiyear analysis is appropriate in determining the reasonableness of the fee. Rather, the Act provides "accounting, budgeting, and financial reporting procedures for cities." *Id.* § 10–6–102. While the Act may require cities to adopt an annual budget for certain funds, it does not follow that the Act requires a court to determine the constitutionality of a fee based on an annual period. We therefore conclude that the City's multiyear analysis is not prohibited by statute.

 ¶ 29 Having determined that the City's multiyear analysis is not prohibited by statute, we next address the propriety of a multiyear analysis. We previously have noted that a multiyear approach is appropriate in evaluating whether the revenues generated by a municipal fee reasonably relate to the regulatory cost. *See Bennion Gas & Oil Co.,* 15 P.2d at 651. The rationale for a multiyear approach is that a city's disbursement for its regulatory expenses "may so vary from time to time that the surplus of one year may be needed to supply the deficiency of another." *Id.* (internal quotation marks omitted).

¶ 30 This rationale is persuasive. While the City experienced a surplus of inspection revenues during calendar year 1999, this surplus was needed to cover the deficiencies the City faced in the following four years, where the City's inspection costs exceeded its revenues. In this case, a multiperiod review is more appropriate than an annual period review because the revenues the City received from its civil inspection fee were received up front. The fees were recognized in the year they were received but the actual inspection costs were incurred over the following months or years.[4] Because we conclude that a multiyear analysis is not prohibited by the Act and is an appropriate approach for analyzing whether a city's costs exceed its reve-

nues, we hold that the district court erred in finding that the City's multiyear analysis was inappropriate.

### C. Associates Failed to Meet its Burden

 ¶ 31 We next address whether the district court erred in holding that Associates met its burden of proving that the City's inspection fee was unconstitutional. The district court concluded that Associates met its burden because the City's procedure for enacting the inspection fee was unreasonable. But this was not the proper analysis. As discussed above, the party challenging a municipal fee bears the burden of demonstrating that the fee itself is unreasonable. *City of N. Logan,* 1999 UT 63, ¶ 8, 983 P.2d 561. In other words, the challenger must demonstrate that the fee is being used to raise revenue for general governmental purposes. *See V–1 Oil Co.,* 942 P.2d at 911. There are two methods by which a challenger can meet this burden. First, it can establish that the fee was enacted for the purpose of raising revenues for the general fund. *See Weber Basin Home Builders Ass'n v. Roy City,* 26 Utah 2d 215, 487 P.2d 866, 867–68 (1971). Second, the challenger can demonstrate that the fee is unreasonable because it is disproportionate to the cost of the services rendered or to the "government's costs of regulating and policing a business or activity." *V–1 Oil Co.,* 942 P.2d at 911.

 ¶ 32 Here, the district court concluded that the City's inspection fee was enacted for a proper purpose. Specifically, it found that the civil inspection fee was enacted to compensate the City for the costs of conducting civil inspections. Associates does not challenge this finding. Therefore, to meet its burden, Associates must establish that the City's civil inspection fee is unreasonable. And because the fee is a regulatory fee, Associates must establish that the City's civil inspection revenues exceed its civil inspection expenses by an unreasonable amount. Asso-

---

4. Associates cites to several cases where an annual review period was used to analyze the reasonableness of a city's fee. *See, e.g., Bixel Assocs. v. City of L.A.,* 216 Cal.App.3d 1208, 265 Cal. Rptr. 347, 350, 354 (Ct.App.1989); *Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte,* 336 N.C. 37, 442 S.E.2d 45, 51 (1994); *Barker's Trailer Court, Inc. v. Borough of Lakehurst,* 371 N.J.Super. 432, 853 A.2d 348, 352 (2004). But none of these cases directly address the issue of whether a multi year analysis is appropriate in reviewing the constitutionality of a fee.

ciates failed to meet this burden. Although Associates presented evidence that the City's civil inspection revenues exceeded its costs, the district court found Associates' evidence unreliable and concluded that the City's inspection costs exceeded its revenues for the five-year period from July 1, 1998, to June 30, 2003. Associates did not present reliable evidence disputing the City's costs/revenue analysis, nor did it present evidence showing how application of a different fee would have led to a more reasonable result. Because Associates failed to show that the City's civil inspection fee was adopted for the purpose of subsidizing its general governmental expenses or that the revenues generated from the fee were excessive, Associates did not meet its burden. We therefore reverse the district court's ruling that the City's inspection fee is unconstitutional.

## II. THE DISTRICT COURT DID NOT ERR IN AWARDING THE CITY ITS EXPERT REBUTTAL COSTS

¶ 33 We next address the district court's order that Associates reimburse the City $16,618.25 for the costs incurred in preparing its expert rebuttal report. Associates argues that the amount of the award is unreasonable because the expenses relate to the preparation of "a report[,] which contains only four pages related to rebuttal testimony" and which was prepared by "four Certified Professional Accountants."

¶ 34 We review a district court's award of expert costs under an abuse of discretion standard. *See Coleman v. Stevens*, 2000 UT 98, ¶ 10–11, 17 P.3d 1122 (stating that a trial court's decision to award the prevailing party its deposition costs is reviewed under an abuse of discretion standard). A party seeking reimbursement for expert expenses must persuade the court that the expert costs are reasonable. *Moore v. Smith*, 2007 UT App 101, ¶¶ 53–58, 158 P.3d 562. The reasonableness of an expert's fee is determined by the totality of the circumstances. *See id.* ¶¶ 53–55 (listing non-mandatory factors a court may consider in determining whether attorney fees incurred are reasonable). The factors to consider in determining the reasonableness of expert

fees is a matter of first impression for this court. Other courts addressing this issue have considered: (1) the expert's hourly rate as compared to the rates of other comparably respected experts in the locality for similar services, (2) the time expended given the nature, quality, and complexity of the work performed, and (3) whether the expert work performed was reasonably necessary to prosecute or defend the matter. *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 495–96 (S.D.Iowa 1992); *Clayton v. Snow*, 131 P.3d 1202, 1203 (Colo.App.2006); *State v. Guthrie*, 631 N.W.2d 190, 195–96 (S.D.2001); *see cf. Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988) (noting that questions relevant to the determination of whether attorney fees are reasonable include (1) what work was actually performed, (2) was the work necessary to prosecute the matter, (3) the reasonableness of the billing rate, and (4) whether other circumstances exist that would require consideration of additional factors). Because Associates does not challenge the City's expert's hourly rate, we analyze only factors two and three, whether the work was reasonably necessary and whether the time expended was reasonable given the nature of the task.

¶ 35 We conclude that the district court did not abuse its discretion when it found that the City's expert rebuttal report was reasonably necessary to defend the matter. The record shows that the district court relied heavily on the City's expert rebuttal report. Indeed, the court cited directly to the City's expert testimony in rejecting Associates' cost/revenue analysis, which was essential to Associates' position that the amount of the inspection fee did not reasonably relate to the City's costs.

¶ 36 The district court also did not abuse its discretion in finding that the 74 hours spent by four accountants in preparing the report was reasonable. In the City's "Expert Declaration in Support Of Expert Witness Costs," the City's expert explained that the rationale behind using the three additional accountants, in addition to the named expert, was to lower costs by assigning certain tasks to lower level staff members. Additionally, the record supports that the time

expended on the report was necessary. The report did not merely estimate the costs and revenues associated with the City's inspection fee, but rather relied on all the relevant information to determine actual costs and revenues. Moreover Associates' failure to include citations in its own expert report rendered the City's task of providing a rebuttal report much more difficult. As the City's Expert explained:

> Rebutting [Associates' expert] report was made more difficult and time consuming due to several factors. The lack of citations was the single most costly aspect in rebutting [Associates' expert] report. For example, in her first opinion, [Associates' expert] made an assertion that cost inflation resulted in unjustifiably high fees for large subdivisions. In order to attempt to support this allegation, [Associates' expert] picked data points favorable to her conclusion which she included in Table 2 of her report. [Associates' expert] only cited "Bonded Improvements from Tooele City Corporation" as the source for this data. The "Bonded Improvements from Tooele City Corporation" comprise four binders full of data. In order to verify her information, I was faced with finding the proverbial "needle in a haystack" to find the two or three single sheets of paper out of these binders that would support her numbers. Once I was able to find the supporting documents, I then had the task of reviewing the entire set of documents to determine whether the materials costs cited in [Associates' expert] report were fairly representative of materials costs for the period in question.

¶ 37 The record supports the district court's determination that the City's expert fees were necessary in the defense of the case and were justified by the complexity of the work performed. We therefore conclude that the district court did not abuse its discretion.

## CONCLUSION

¶ 38 The district court erred when it determined that the City's civil inspection fee was unconstitutional. Specifically, it misapplied the constitutional test for determining wheth-

er a regulatory fee is reasonable by focusing on the City's fee-setting procedure, rather than on the reasonableness of the fee itself. It further erred in rejecting the City's multi-year analysis in evaluating the reasonableness of the fee. And it erred in holding that Associates met its burden in challenging the City's regulatory fee. We therefore reverse the district court's holding that the fee was unconstitutional. But we affirm the district court's decision to award the City its costs incurred in preparing its expert rebuttal report.

¶ 39 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING and Judge MORTENSEN concur in Justice PARRISH's opinion.

¶ 40 Due to his retirement, Justice WILKINS did not participate herein. Judge MORTENSEN sat.